THE DAILY MONUMENT CO., APPELLEE, *v.* CROWN HILL
CEMETERY ASSN. ET AL., APPELLANTS.

144

(No. 5130—Decided July 13, 1961.)

*Messrs. Brouse, McDowell, May, Bierce & Wortman,* for appellee.

*Messrs. Roudebush, Adrion, Brown, Corlett & Ulrich,* for appellants.

SKEEL, J.   This appeal comes to this court on questions of law and fact from a judgment and decree entered for the plaintiff by the Court of Common Pleas of Summit County.   The action is one seeking to enjoin the cemetery association from charging its burial lot holders, and the plaintiff, alleged excessive charges for installation and maintenance care of memorials placed on graves in the cemetery; to fix the amount of money that the defendant may lawfully charge for such services to be considered in relation to similar charges made by other cemeteries in the area; to enjoin the defendant from enforcing its rules and regulations requiring installation of marker foundations "only by it"; to enjoin the defendant association from selling grave markers; to determine that the defendant association's rules and regulations complained of and the sale of grave markers or memorials by defendant are unlawful and contrary to public policy; to enjoin the defendants from doing, directing

or participating in any unlawful acts complained of by the plaintiff; and the granting of such other relief as the court deems advisable and proper, including an allowance of attorney's fees to counsel for plaintiff.

In this action, as originally filed, only the Crown Hill Cemetery Association was made defendant. The petition was filed November 24, 1958. It contained or had attached thereto fifteen interrogatories, which were answered by a pleading filed December 20, 1958. Thereafter, new parties defendant were named and an amended petition was filed, the new parties defendant being the trustees, who were also the officers of the cemetery association. They entered their appearance on June 27, 1959. Before trial, the defendant John L. Johnson was dismissed from the case.

The amended petition alleges that the plaintiff is an Ohio corporation organized for profit, having its office and place of business in Akron, Ohio, and is in the business of selling cemetery markers and monuments; that the defendant, Crown Hill Cemetery Association, is an incorporated nonprofit cemetery association, having been organized pursuant to Chapter 1721 of the Revised Code, and enjoying all the immunities and freedom from taxation therein provided; and that the remaining defendants are the trustees and officers of the association. It is alleged that the association operates Crown Hill Cemetery. Such cemetery consists of about two hundred fifty acres located in Twinsburg Township, Summit County, wherein it sells lots for burial purposes.

It is alleged also that the association is engaged in selling cemetery markers or memorials to lot owners in the cemetery in competition with the plaintiff and others in like business, and that because of the number of parties in like business in the area, it is not practical to bring all of them in as plaintiffs and for that reason it is alleged that this action is brought on behalf of all others engaged in selling markers in the area. The plaintiff's evidence shows that of twenty-five monument dealers in Summit, Cuyahoga, and Stark Counties, only five are located in Summit County, so that plaintiff's claim of the right to maintain a representative suit is not supported by the evidence.

It is alleged that the cemetery association enforces certain rules which, among other things, require that all installation of

markers or memorials be done by the association "and not by others"; that since August 14, 1958, by written notice to plaintiff, the price for such services, including maintenance fees for a single bronze marker was fixed at $65; and that by verbal notice the price for installing a double bronze marker and its maintenance fee was increased to $125, which increase in charges have since been required by the association. It is alleged that such increase in charges bears no reasonable relation to the actual cost and expense and also bears no reasonable relation to charges made by other cemeteries in Summit and Cuyahoga Counties which have comparable costs.

It is alleged that the cemetery association, acting through its board of trustees and its officers, "and each of the other defendants herein [there are no other defendants], acting in combination and concert" with the cemetery association, "have combined in the doing of certain acts for the following purposes:

"A. To create or carry out a restriction in trade or commerce relating to sale of cemetery markers;

"B. To increase the price of said markers to persons purchasing markers for installation in Crown Hill Cemetery;

"C. To prevent competition in the sale of markers for installation in Crown Hill Cemetery;

"D. To make, execute or carry out a contract so as to preclude free and unrestricted competition among the defendant Crown Hill Cemetery Association and purchasers in the sale of markers for said cemetery;

"E. To promote the sale by said defendant association of its own markers (meaning the markers it purchases for resale) and to discourage and discriminate against the purchase of such markers from plaintiff and others similarly situated."

It is alleged that a substantial part of the fees charged for installation and maintenance of markers is not required for that purpose but is used by the association for the benefit of persons and parties with whom it is associated in the acts complained of; that the tendency and object of such excessive charges and fees is to establish a monoply in Crown Hill Cemetery in respect to the sale of markers, in violation of the statutes of Ohio controlling and restricting monoplies and to obtain an excessive price for markers under the guise of installation and maintenance charges.

It is alleged also that the rules and regulations of the association, requiring that it make all installations of markers, are arbitrary, unreasonable, contrary to public policy, against the interests of the public, and unlawful. It is alleged further that the sale of markers is in violation of the association's purposes, that such sales constitute unfair competition with others in said business which do not have a tax-exempt status, and that such activity is therefore contrary to public policy and constitutes a wrongful interference with plaintiff's and other monument dealers' business and creates an undue economic advantage for the defendant association. Moreover, it is alleged that all the defendants have participated and are participating in the unlawful acts complained of by the plaintiff in its amended petition, that the plaintiff has been damaged by the acts complained of, that it has no adequate remedy at law, and that it is necessary that the defendants be enjoined from continuing so to act to plaintiff's damage.

Separate answers were filed on behalf of the cemetery association and the other defendants. In both answers, the corporate capacity of the plaintiff is admitted. It is admitted also that the defendant association is a nonprofit corporation, that the defendant cemetery association is the owner of and operates Crown Hill Cemetery, that it duly adopted regulations, which among other things provide that only the cemetery association can install and maintain markers in its cemetery, that a charge of $65 is made for the installation and maintenance of a single bronze marker, and that the suppliers of markers, including the plaintiff, were notified of this charge. The pleadings do not mention the charge for double markers, but such fact does not seem to be in dispute. All other claims of the plaintiff are specifically denied.

It is the claim of the defendants that the plaintiff has no legal power or authority to attack the defendants' right to sell memorials and to provide for the exclusive right to install and maintain markers purchased by lot owners in its cemetery and that the issue of the reasonableness of its regulations is for the determination of its board of trustees. It is also the claim of the defendants that no cause of action is stated or supported by evidence under the Valentine Act (Chapter 1331 of the Revised Code), and that its charges relating to the installation and maintenance of markers are reasonable and valid.

The articles of incorporation of the association, as amended January 9, 1950, and October 27, 1958, in part provide, in setting forth the powers of the defendant nonprofit corporation: "to sell, install and maintain markers, memorials and all other adornments of any character or materials, as well as burial vaults, tombs, crypts * * * shrubbery, trees and landscaping."

The rules and regulations of the cemetery association are in the record and seem to be complete in every detail. Rule 8A, "Bronze Memorial Tablets for Earth Burials," provides in part:

"Monuments or stones of any kind, or inclosures, shall not be permitted within the cemetery. Only bronze tablets or markers (known as bronze memorials) shall be allowed and they must be set level with and follow the contour of the established grade, and be placed on the path so as to be read from the path. * * *"

This rule then specifies the size or dimensions of bronze memorials which must be approved by the cemetery management and defines the analysis of bronze alloy that must be used.

Rule 8D, "Placing of Markers or Memorials," provides:

"Each marker or memorial shall be set on a foundation constructed by the association and the memorial must be installed on the foundation by the association. The expense of such construction and installation and the maintenance thereof shall be fixed by the association and published and such price shall be paid upon delivery of the memorial to the cemetery. * * *"

"As of Jan. 1, 1959, there shall be set aside from the installation and maintenance fee collected on all markers or memorials, the sum of $20 per single memorial and $40 per companion memorial in a separate reserve fund for the future maintenance of markers or memorials."

If the fact is of any significance here, the record clearly shows that the fee charged by the cemetery association for the installation and maintenance of bronze memorials purchased by lot owners from it is the same as that charged for the installation and maintenance of memorials sold by others than the association.

A few general observations should be made, which are supported by the evidence in the case, dealing with the operation of a cemetery. The operation of a nonprofit cemetery corpora-

tion must, through its management, maintain financial stability and enlightened supervision if it is to accomplish its purpose. The neglect that attends a cemetery without the benefit of responsible and continuous management, and the financial inability to provide perpetual care is evident by observing many churchyard burial grounds and those where lot owners are the only ones responsible for keeping their respective lots in sightly condition. The waning of interest or gradual departure from the place where a deceased friend or relative is buried, of those interested in maintaining the burial lot in good order, spells complete neglect of the grave unless before or at the time of burial the services of a cemetery organization are contracted for under terms that will provide the care which is contemplated on the day of burial. Where proper provision is made, it is undoubtedly true that each lot owner has the right, if the contract of purchase so provides, to expect that all other lots and the cemetery as a whole will be kept in a presentable condition.

That such an organization providing perpetual care of a cemetery is good for a community is evidenced by the fact that the Legislature has dealt with the subject in Chapter 1721 of the Revised Code where the rights, duties, and privileges of a cemetery association, incorporated not for profit under the act, are spelled out in detail.

Section 1721.07, Revised Code, provides:

"A cemetery company or association may adopt rules for disposing of and conveying burial lots; but any person not already the owner of a lot in the cemetery may purchase any unsold lot in it, and have such lot conveyed to him by the company or association upon tender of the usual price asked by it for such lots.

"Burial lots sold by a cemetery company or association shall be used for the sole purpose of interments, shall be subject to the rules prescribed by the company or association, and shall be exempt from taxation, execution, attachment, or any other claim, lien, or process if used exclusively for burial purposes and with no view to profit."

Section 1721.19, Revised Code, provides:

"No person shall violate a bylaw, rule, or regulation adopted by the trustees, directors, or other officers of a cemetery company or association, or by a board of township trustees

having charge of township cemeteries, with reference to the protection, good order, and preservation of cemeteries, and the trees, shrubbery, structure, and adornments therein.

"Watchmen, superintendents, gardeners, or agents of a cemetery company or association may arrest on view, a person found violating this section and bring him before a judge of a County Court or a judge of a Municipal Court having jurisdiction within the township for trial." (Amended effective January 10, 1961.)

Many other sections of this chapter bear directly on the issues presented here concerning the powers and duties of a cemetery association in its management and care of the property dedicated by the association for cemetery use.

The first claim of the plaintiff, that the defendant association is without power to sell grave memorials in competition with the plaintiff and others engaged in the monument business, is without any legal foundation whatever. As quoted from the amended charter of Crown Hill Cemetery Association, the right to deal in the sale of grave memorials is clearly and completely spelled out. The fact that by Section 1721.07, Revised Code, its property is exempt from taxation does not (as claimed by the plaintiff) raise any question of public policy or qualify its right to exercise all the privileges granted by its charter, and if such issue can be properly pleaded in this case, there is no evidence to support the plaintiff's claim. However, the only way an alleged misuse or abuse of the cemetery association's charter privileges can be challenged is in a proceeding in quo warranto, and the only courts in Ohio which are vested with jurisdiction of such an action are the Supreme Court and the Court of Appeals. Section 2733.03, Revised Code. The Common Pleas Court is without jurisdiction to challenge the right of the defendant cemetery association to exercise the privileges granted it by the state of Ohio as shown by its articles of incorporation. *Veterans of World War I* v. *Levy*, 70 Ohio Law Abs., 49. We, therefore, resolve the claim of the plaintiff, that the defendant association cannot sell memorials in competition with the plaintiff, in favor of the defendant association. 45 Ohio Jurisprudence (2d), 635, Quo Warranto, Section 17, "Misusing, Abusing, or Exceeding Charter or Franchise Powers." The cases cited by the plaintiff in support of its challenge of the right of the asso-

ciation to install memorials are cases brought by lot owners. We are not here concerned with the principles of law for which these cases stand. Whether a lot owner can maintain an action to avoid regulations of a cemetery association claimed to be unreasonable is not an issue in this case. Here, the plaintiff claims to be a competitor of the association in selling bronze memorials and as a competitor claims the right to challenge the association's rules which provide regulations as to the use of cemetery lots in the association cemetery, such regulations being for the benefit of lot owners. The plaintiff, being one without any contractual relationship with the defendant association, has no legal right to challenge the rules of the association restricting the installation of markers or memorials and requiring that such installation be done by its employees and under its supervision. From the standpoint of uniformity of installation standards and the cemetery's obligations to its lot owners to provide future care, such rules are a reasonable exercise of the powers conferred upon the association under its articles of incorporation and under Sections 1721.07 and 1721.19, Revised Code.

This leaves the question of whether the plaintiff has legal capacity to challenge the fee charged by the association's officers for installation and maintenance of memorials.

Unless its legal or contractual rights are violated by the manner in which the association conducts its business, under the rules adopted in furtherance thereof, the plaintiff cannot seek injunctive or any other relief against the association by judicial process. The only persons who have legal justification for judicial relief against alleged unreasonable regulations adopted by the cemetery association are lot owners, those in privity of contract with such owners, and those holding a contractual right with the association in relation to the conduct of its purposes. In the case of *Di Cristoforo* v. *Laurel Grove Memorial Park*, 43 N. J. Super., 244, 128 A. (2d), 281, in considering this question, the court said, starting at page 249:

"So far as the complaint is cast in the guise of an effort to enforce statutory or other limitations upon the exercise of the corporate powers of the defendants or to procure a judicial determination of the legality of or reasonableness of their rules and regulations, as such, we are in agreement with the decision of the trial court that the plaintiffs have no standing to com-

plain. * * * [Citations omitted.] The majority view is that the reasonableness of a cemetery rule or regulation can be questioned only by one having an interest in a lot or in those buried therein. * * * We concur in the settled view that the reasonableness of cemetery regulations, as such, is a matter ordinarily between the lot owners and the organization, alone.''

There is no evidence in this record to support the claim that the acts of the cemetery association and its officers are in violation of the rights of the plaintiff under the Valentine Act. Section 1331.01 *et seq.*, Revised Code. Section 1331.01, Revised Code, in part, provides:

"As used in Sections 1331.01 to 1331.14, inclusive, of the Revised Code:

''* * *

"(B) 'Trust' is a combination of capital, skill, *or acts by two or more persons* for any of the following purposes: * * *'' (Emphasis added.)

It, therefore, follows that there must be a combination of persons or entities who act together in violation of the provisions of this chapter before there can be a cause of action stated. There is no evidence of such a combination in this record. The cemetery association confines its sales efforts of memorials, as it must, to those to be used by the purchasers of lots in its cemetery. It is not in general competition with the plaintiff in the sale of memorials, and there is no evidence that the efforts of its trustees and officers are concerned with anything other than acting in furtherance of the association's business, such management being necessary if the association is to carry out its purposes. There is no regulation which requires a lot owner to buy memorials from the association. The regulation challenged, that the installation and maintenance of memorials be done by the cemetery, is necessary to maintain uniformity and, therefore, is reasonable. The acts of the officers in conducting the business of the association do not create a conspiracy in violation of any legal right of the plaintiff. The rules applicable here are clearly expressed in the case of *Nelson Radio & Supply Co., Inc.*, v. *Motorola, Inc.*, 200 F. (2d), 911, at page 914, where the court said as follows:

"But apart from this infirmity we think the allegation claiming the existence of a conspiracy under Section 1 contains

a more fundamental defect. It is basic in the law of conspiracy that you must have two persons or entities to have a conspiracy. A corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation. Here it is alleged that the conspiracy existed between the defendant corporation, its president, Calvin, its sales manager, Kelly, and its officers, employees, representatives and agents who have been actively engaged in the management, direction and control of the affairs and business of defendant. This is certainly a unique group of conspirators. The officers, agents and employees are not named as defendants and no explanation is given of their non-joinder. Nor is it alleged affirmatively, expressly or otherwise, that these officers, agents and employees were actuated by any motives personal to themselves. Obviously, they were acting only for the defendant corporation. It is true that the acts of the corporate officers may bring a single corporation within Section 2 of the Sherman Act, which covers an attempt to monopolize, but this is not because there exists in such circumstances, a conspiracy to which the corporation is a party. * * *

"We think that in naming these officers, employees and agents as conspirators the plaintiff was mistakenly attempting to avail himself of the doctrine that what it would not be illegal for a corporation to do alone would be illegal as a conspiracy when done with another legally separate person or entity. However, as stated by Judge Chestnut in *Arthur* v. *Kraft-Phenix Cheese Corporation*, D. C. 26 F. Supp., 824, 830 '* * * the inclusion of the defendant's agents in the alleged conspiracy would seem to be the only basis for a technical rather than a substantial charge of conspiracy because obviously the agents were acting only for the defendant corporation.' In the absence of any allegation whatever to indicate that the agents of the corporation were acting in other than their normal capacities, plaintiff has failed to state a cause of action based on conspiracy under Section 1 of the Act. *Kiefer-Stewart Co.* v. *Joseph E. Seagrams & Sons*, 340 U. S., 211, 214, 71 S. Ct., 259, 95 L. Ed., 219; *Fleetway, Inc.,* v. *Public Service Interstate Transp. Co.,* 3 Cir. 72 Fed. (2d), 761; *U. S.* v. *Quaker Oats Co.,* D. C. 232 F., 499; *Arthur* v. *Kraft-Phenix Cheese Corporation, supra*; *Neumann* v. *Bastian Blessing Co., supra* [D. C. 70 F. Supp., 447, 448]."

The amounts charged by the association for installation and maintenance are $65 for a single memorial and $125 for a double memorial. The plaintiff introduced evidence by which it claims to have shown that such charges are far in excess of actual costs. Many factors of cost are missing from this evidence, and the facts contended for are not supported by the preponderance of the evidence. The claim is made also that in making such alleged excessive charges the association thereby commits an act of discrimination in preventing the plaintiff from competing with the association in the sale of memorials to lot owners in the association's cemetery. While it is claimed that the association in making a sale of a memorial does not set out separately the price of the memorial from that charged for installation and maintenance, there is no evidence in this record that the association discounts the sales price of the memorials because of the charge made for installation and maintenance. In fact, the sale price for a single memorial and installation by the association is shown by the plaintiff's evidence to be the same as that for which it renders the same service to all lot owners. The cemetery having the right to reserve to itself the exclusive right to install and maintain memorials in its cemetery and there being no evidence that the price charged for such service bears any relation to the price charged by it for memorials (if this fact has any bearing on the law of the case), it necessarily follows that no act of discrimination is shown against the plaintiff or those claimed to be associated with it or acting in the sale of memorials to the lot owners in Crown Hill Cemetery. In any event, the cemetery association, in the acts complained of, is in fact carrying out its lawful business, and the plaintiff has no lawful right to interfere, as shown by the record.

For the foregoing reasons, a decree is entered for the defendants, and the costs are assessed against the plaintiff, for which judgment is entered.

*Judgment for defendants.*

HURD and HUNSICKER, JJ., concur.

SKEEL and HURD, JJ., of the Eighth Appellate District, sitting by designation in the Ninth Appellate District.