STATE EX REL. WILLOW MONUMENT WORKS, INC. *v.*
MOUNTAIN GROVE CEMETERY ASSOCIATION

WILLOW MONUMENT WORKS, INC. *v.* MOUNTAIN
GROVE CEMETERY ASSOCIATION ET AL.

HOUSE, C. J., LOISELLE, MACDONALD, BOGDANSKI and LONGO, Js.

Argued February 7—decision released May 13, 1975

*A. Reynolds Gordon,* with whom, on the brief, was *Arthur A. Hiller,* for the appellant (plaintiff) in both cases.

*Frederick L. Comley,* with whom, on the brief, was *James B. Stewart,* for the appellee (named defendant) in both cases.

*Richard J. Lynch,* assistant attorney general, for the appellee (defendant attorney general) in the second case.

LOISELLE, J. The defendant Mountain Grove Cemetery Association, hereinafter referred to as Mountain Grove, is a cemetery open to the public, located on North Avenue, the Bridgeport-Fairfield town line. It was organized in 1849 as a private enterprise for cemetery purposes and in 1889, by special act, it became a nonstock corporation organized and existing for the purpose of a cemetery. It now has in excess of 125 acres of land. Mountain Grove has on its premises one of the

two crematories existing in Connecticut. The crematory, opened pursuant to No. 85 of the 1949 Special Acts, serves the public at large. In 1967, Mountain Grove commenced, and to this day continues, to sell bronze markers for profit to its cemetery lot holders. It receives its gross income from various sources including the sale of lots, charges for digging graves, tent fees, income from securities, crematory income, sale of crypts in its mausoleum, sale of space in the columbarium, sale of bronze urns for crematory remains and face plates in the mausoleum, in addition to the sale of bronze markers. Except for crematory services, Mountain Grove's sales and services are limited to lot holders in its cemetery. It alone supplies canopies or tents for funerals and does all necessary foundations on installations of markers and stones in order to avoid damage and to ensure proper maintenance.

The plaintiff in both cases, Willow Monument Works, Inc., hereinafter referred to as Willow Monument, brought these actions for forfeiture of Mountain Grove's charter and for an injunction to restrain Mountain Grove from selling bronze markers to its lot holders. Willow Monument is located across North Avenue from Mountain Grove. It has been in business since 1942. Of the total markers, either bronze or stone, sold and installed by anyone at Mountain Grove, including monument dealers and Mountain Grove itself, Willow Monument does about 40 to 45 percent of this business. Since 1967, out of 135 bronze markers installed at Mountain Grove, 13 were sold by Willow Monument, 4 by other private marker dealers, and 118 by Mountain Grove. Mountain Grove does not solicit or advertise the sale of

bronze markers other than at the cemetery itself. A lot holder is told that Mountain Grove has the bronze markers or that they may be bought elsewhere. No extra charge is made to lot holders who purchase bronze markers elsewhere, and no representation is made that there is any advantage in buying a bronze marker from Mountain Grove over buying one from another source. The only requirement in Mountain Grove's regulations concerning bronze markers is the dimensions. The proceeds of the sale of bronze markers go into a general fund which is used exclusively for the maintenance of the cemetery. Mountain Grove attempts to make a profit on all its services and operations so as to pay for the cost of maintaining the cemetery and to establish a perpetual fund which will be adequate to provide for the maintenance of the cemetery after it is full and derives no further income from the sale of grave spaces.

In its combined appeal from the judgment rendered for Mountain Grove in each case, Willow Monument claims that inasmuch as Mountain Grove is a public cemetery it is a charitable organization devoted to a charitable public use and that by virtue of the statute of charitable trusts; General Statutes § 45-79; and the statute of charitable uses; General Statutes § 47-2;[1] lands and property owned by it may not be used for commercial purposes unless reasonably necessary to continue that

---

[1] "[General Statutes] Sec. 47-2. CHARITABLE USES. All estates granted for the maintenance of the ministry of the gospel, or of schools of learning, or for the relief of the poor, or for the preservation, care and maintenance of any cemetery, cemetery lot or monuments thereon, or for any other public and charitable use, shall forever remain to the uses to which they were granted, according to the true intent and meaning of the grantor, and to no other use whatever."

charitable purpose. It is conceded that the sale of bronze markers for a profit is not reasonably necessary to the operation of the cemetery.

Section 2 of part 1 of chapter 6 of title 18 of the General Statutes (Rev. 1875)[2] reads as follows: "All estates that have been or shall be granted for the maintenance of the ministry of the gospel, or of schools of learning, or for the relief of the poor, or for any other public and charitable use, shall forever remain to the uses to which they have been or shall be granted, according to the true intent and meaning of the grantor, and to no other use whatever." The marginal note designates this statute as "[l]ands given to charitable uses."

In 1884, the case of *Coit* v. *Comstock,* 51 Conn. 352, 386, held that "bequests for the purpose of keeping burial lots or cemeteries in good order or repair, are not given in charity, and, therefore, are not protected by the statute of charitable uses." This decision indicates the rule in this state that cemeteries were not charitable operations.

In 1885, apparently as a result of the case of *Coit* v. *Comstock,* supra, by Public Acts, chapter 36, the General Assembly enacted the following: "All estates that have been or shall be granted for the preservation, care and maintenance of any cemetery, cemetery lot, or of the monuments thereon, shall forever remain to the uses to which they have been or shall be granted, according to the true intent and meaning of the grantor, and to no other use whatever." This act was entitled "An Act relating to Charitable Uses." The marginal note

---

[2] This statute was passed in 1684, but as it did not appear in the printed statutes before the revision of 1702, it is generally called the statute of "1702."

states: "Estate granted for care of cemetery or monument, to remain to the use for which granted." Although the title of the act referred to charitable uses, this act made no distinction between public and private cemeteries; *FitzGerald* v. *East Lawn Cemetery, Inc.,* 126 Conn. 286, 291, 10 A.2d 683; and "did not purport to, nor did it, denominate, as charitable, such a clearly noncharitable bequest." *Clark* v. *Portland Burying Ground Assn.,* 151 Conn. 527, 532–33, 200 A.2d 468; cf. *Bronson* v. *Strouse,* 57 Conn. 147, 149, 17 A. 699.

In the revision of the General Statutes of 1888, the revisers combined the 1885 act with the statute of charitable uses so that it read as it does in the present General Statutes § 47-2 except for slight, inconsequential wording. Rev. 1888 § 2951. This combining was probably made because of the misleading title given to the 1885 act. *Clark* v. *Portland Burying Ground Assn.,* supra, 533. " 'There is a presumption that a general revision of the statutes does not change the law'; *Miller* v. *Phoenix State Bank & Trust Co.,* 138 Conn. 12, 16, 81 A.2d 444; and in the absence of anything evincing a contrary intent, the meaning and the effect of the statute were unchanged. *State ex rel. Rundbaken* v. *Watrous,* 135 Conn. 638, 648, 68 A.2d 289; *Bassett* v. *City Bank & Trust Co.,* 115 Conn. 393, 400, 161 A. 852." *Southington* v. *Francis,* 159 Conn. 64, 70, 266 A.2d 387. It is apparent from this history that the provision in § 47-2 concerning grants, devises or bequests to a cemetery prevents such a grant, devise or bequest from being invalid under the rule against perpetuities but does not make such a transfer a charitable one. Nor does the statute either directly or by implication make the operation of a cemetery a charitable use. In *Weed*

v. *Scofield,* 73 Conn. 670, 678–79, 49 A. 22, decided a considerable time after the enactment of the 1885 act and its being combined with the statute of charitable uses by the revision of 1888, it was unequivocally stated that a cemetery association "is neither a religious nor a benevolent society or institution."

Willow Monument points out that a cemetery has the right of eminent domain and is exempt from property and succession taxes as are all charitable uses. The right of eminent domain is specifically given to the owner of any cemetery by virtue of General Statutes § 19-147 and § 48-18. The fact that the right to acquire land as a public burying ground for public use is granted to a cemetery does not make it a charitable use any more than a right of eminent domain granted to a public utility makes it a charitable use. Property held for cemetery use is specifically exempt from taxation under General Statutes § 12-81 (11). This is separate and distinct from the tax exemption of property used for charitable purposes under § 12-81 (7). According to the facts found and conclusions reached by the court, Mountain Grove is exempt from succession taxes. Willow Monument claims that, as no specific statute grants such exemption, the cemetery must come under the provision for charitable organizations in General Statutes § 12-347. Although there is no specific exemption for cemeteries generally, § 12-347 does make exemption for a trust for the care of any cemetery lot. And it must be noted that gifts for charitable purposes do not lose their charitable nature because a cemetery may be involved. See *FitzGerald* v. *East Lawn Cemetery, Inc.,* 126 Conn. 286, 10 A.2d 683, where a bequest to a trust to build and main-

tain a chapel in a private cemetery open to the public, such as Mountain Grove, was held not to be a bequest to the cemetery but for a chapel to be erected in the cemetery which sufficiently served the public interest so as to be a bequest for a charitable use. Id., 290, 291.

Willow Monument seems to argue that if the use is public it necessarily becomes a charitable use.[3] It also relies upon the language in such cases as *FitzGerald* v. *East Lawn Cemetery, Inc.,* supra; *Mitchell* v. *Reeves,* 123 Conn. 549, 196 A. 785; *Corbin* v. *Baldwin,* 92 Conn. 99, 101 A. 834; *Connecticut College for Women* v. *Calvert,* 87 Conn. 421, 88 A. 633; and *Application of St. Bernard Cemetery Assn.,* 58 Conn. 91, 19 A. 514. These cases discuss the public use aspect of cemeteries and do compare them with charitable organizations or associations and in some instances, by dicta, do consider cemeteries together with charities regarding tax exemption and eminent domain issues. It is unquestioned that Mountain Grove does maintain a public cemetery. This is determined not by ownership but by public use. *Barnes* v. *New Haven,* 140 Conn. 8, 15, 98 A.2d 523; 14 Am. Jur. 2d, Cemeteries, § 2. A public use will authorize, in a constitutional sense, special legislative treatment such as the right of eminent domain and tax exemptions but that use does not render the use a charitable one or the recipient a charitable entity. See *Con-*

[3] See Jones, History of the Law of Charity 1532-1827, c. 8, pp. 121–27. Public uses were ipso facto deemed charitable in 18th century English cases dealing with the definition of charity under the statute of Elizabeth, but the argument that "upon the authorities almost everything, from which the public derive benefit, may be considered a charity" was conclusively rejected in *Morice* v. *Bishop,* 9 Ves. 399, 10 Ves. 522, a case considered with approval in *Adye* v. *Smith,* 44 Conn. 60.

*necticut Light & Power Co.* v. *Costello,* 161 Conn. 430, 288 A.2d 415 (eminent domain for land to erect transmission lines); *Northeastern Gas Transmission Co.* v. *Collins,* 138 Conn. 582, 87 A.2d 139 (eminent domain of land for private pipeline); *Olmstead* v. *Camp,* 33 Conn. 532 (eminent domain of flowage rights for private company).

It is not universally held that cemeteries are not charitable in nature; see *Frank* v. *Clover Leaf Park Cemetery Assn.,* 29 N.J. 193, 148 A.2d 488;[4] *Davie* v. *Rochester Cemetery Assn.,* 91 N.H. 494, 495, 23 A.2d 377; however, both our case law and the legislative history of the statute of charitable uses make it clear that in this state the operation of cemeteries is not denominated or considered charitable. Although, as indicated above, some of our cases consider cemeteries and charitable organizations in the same context when discussing the issue of public use, we find nothing in them to justify a deviation from the holding in *Weed* v. *Scofield,* 73 Conn. 670, 49 A. 22, that a cemetery association is "neither a religious nor a benevolent[5] society or institution."

In 1969, the charter of Mountain Grove was amended by the General Assembly. Included in the amendment was the provision that the corporation shall have the right "to buy and sell such articles

[4] Under New Jersey law a cemetery organized under the Rural Cemetery Associations Act, N.J. S.A. 8:1-1 et seq., is required to function as a quasi-public charitable trust, but New Jersey law does not treat cemeteries as equatable with charitable institutions for purposes of inheritance tax exemption; *In re Kuebler,* 106 N.J. Super. 13, 254 A.2d 115; or charitable immunity. *Lawlor* v. *Cloverleaf Memorial Park, Inc.,* 56 N.J. 326, 266 A.2d 569.

[5] While it is true that there may be a benevolent purpose which is not charitable, in the legal sense of the term, the converse is not equally true. "[T]here is no charitable purpose which is not also a benevolent purpose." *Adye* v. *Smith,* 44 Conn. 60, 71.

of personal property as may be necessary or proper for the operation and maintenance of the cemetery." 34 Spec. Acts 23, No. 17 § 3. Willow Monument claims that as the sales of bronze markers are not necessary for the operation and maintenance of the cemetery, Mountain Grove should be enjoined from selling them. Whether such sales must be classed as necessary if Mountain Grove were a charitable institution need not be considered. The charter does give Mountain Grove the right to sell personal property if "proper" to the operation and maintenance of the cemetery.

There are divergent viewpoints found in cases in other states on the general subject of sales of markers and monuments by cemetery associations as being a proper function of a cemetery. In *Frank* v. *Clover Leaf Park Cemetery Assn.,* supra, the New Jersey Supreme Court held that under New Jersey law a cemetery was a charitable trust and its managers were trustees in charge of the operation of a quasi-public institution and that sale of markers was not necessary nor suitable or "proper" to the operation or maintenance of a cemetery. See also *People ex rel. J. H. Anderson Monument Co.* v. *Rosehill Cemetery Co.,* 3 Ill. 2d 592, 122 N.E.2d 283. On the other hand, in *Wilmington Memorial Co.* v. *Silverbrook Cemetery Co.,* 297 A.2d 378, (Del.), it was held that the sale of bronze markers was a reasonably related activity to the operation of a cemetery. See also *Daily Monument Co.* v. *Crown Hill Cemetery Assn.,* 114 Ohio App. 143, 176 N.E.2d 268. In *Gingrich* v. *Blue Ridge Memorial Gardens,* 444 Pa. 420, 424, 282 A.2d 315, it was held that "[m]arkers and monuments are integral parts of cemeteries and essential to the character and type of cemeteries maintained. That entity which oper-

ates and maintains a cemetery—whether it be a corporate body or a religious charitable trust—engages in the sale of markers and monuments to lot owners—on a voluntary rather that a compulsory basis—clearly has the incidental and implied power to do so." No attempt is made to cite and discuss all the cases representing both viewpoints.

The Mountain Grove charter as amended clearly indicates the legislative intent to grant to the association the power to engage in sales of personal property related to the operation of a cemetery. "Burial of and memorializing the dead are certainly related activities. As the court said in *Clagett* v. *Vestry of Rock Creek Parish*, . . . 241 F. Supp. 950 [(D.D.C.)]: 'grave and marker . . . are so intimately related to the extent that the suggestion of one suggests the other.'" *Wilmington Memorial Co.* v. *Silverbrook Cemetery Co.*, 287 A.2d 405, 408 (Del. Ch.). In view of the broad language of the charter relating to the sale of personal property, the close relationship of a grave marker to a grave, and the method of sales to lot holders alone without discrimination to other vendors, the sale of bronze markers by Mountain Grove to its lot holders is a proper exercise of its charter powers. The trial court found that the proceeds of the sales of bronze markers go into the general fund of the cemetery and are devoted solely to cemetery purposes. It also concluded that the sale of bronze markers is a proper part of the operation of the cemetery. The subordinate facts found support the conclusion made.

Willow Monument also claims in the second case that the sale of bronze markers by a cemetery is

illegal as being against public policy and relies prin-
cipally on *Frank* v. *Clover Leaf Park Cemetery
Assn.*, 29 N.J. 193, 148 A.2d 488. The court found
that Mountain Grove sells bronze markers only to
its lot holders; it does not advertise or solicit; lot
holders are not required to buy bronze markers
from it and no representation is made that there is
any advantage to a lot holder in buying from it; and
no extra charge results to lot holders who purchase
bronze markers from dealers. In *Frank* v. *Clover
Leaf Park Cemetery Assn.*, supra, the cemetery
had no charter power to sell markers; it discrim-
inated against lot holders who purchased from
other dealers; and, under New Jersey law, a ceme-
tery is a "charitable trust." A comparison of the
facts found by the court in the present case to those
in the *Frank* case makes it clear that the latter case
is not controlling. It is recognized that other juris-
dictions have split on this issue.[6] Since the legisla-
ture has seen fit to authorize the sale of personal
property by Mountain Grove, there is no public
policy established by the state which would render
the sale of bronze markers by Mountain Grove

---

[6] The authorities appear to be unequally divided. Jurisdictions
which would seem to allow the complained-of activity are: *Clagett* v.
*Vestry of Rock Creek Parish*, 241 F. Sup. 950 (D.D.C.); *Wing* v.
*Forest Lawn Cemetery Assn.*, 15 Cal. 2d 472, 101 P.2d 1099; *Gasser*
v. *Crown Hill Cemetery Assn.*, 103 Colo. 175, 84 P.2d 67; *Wilming-
ton Memorial Co.* v. *Silverbrook Cemetery Co.*, 297 A.2d 378 (Del.);
*People ex rel. Guettler* v. *Mount Olive Cemetery Assn.*, 26 Ill. 2d 156,
186 N.E.2d 39; *State ex rel. Benson* v. *Lakewood Cemetery*, 197 Minn.
501, 267 N.W. 510; *Davisson* v. *Mount Moriah Cemetery Assn.*, 87
Mont. 459, 288 P. 612; *Daily Monument Co.* v. *Crown Hill Cemetery
Assn.*, 114 Ohio App. 143, 176 N.E.2d 268; *Schaefer* v. *West Lawn
Memorial Cemetery*, 222 Ore. 241, 352 P.2d 744; *Gingrich* v. *Blue
Ridge Memorial Gardens*, 444 Pa. 420, 282 A.2d 315. Contra: *People
ex rel. J. H. Anderson Monument Co.* v. *Rosehill Cemetery Co.*,
3 Ill. 2d 592, 122 N.E.2d 283; *Terwilliger* v. *Graceland Memorial
Park Assn.*, 35 N.J. 259, 173 A.2d 33.

illegal; nor does our case law indicate otherwise. The sale of bronze markers by Mountain Grove does not violate the public policy of this state.

It is argued that commercial activity by a cemetery with tax exemptions does injury to the tax base of local communities. The other side of the coin is that none of the profit is distributed to anyone but, on the contrary, it is used for maintenance and for augmentation of the perpetual care fund, so that when all of the burial lots have been sold there will be resources to maintain the cemetery rather than have the cemetery become a public charge; General Statutes § 19-159; and thereby to relieve the local government of a financial burden it would otherwise be required to carry.

Because of the conclusions reached in the second case that Mountain Grove was not exceeding its charter powers, it is unnecessary to determine the propriety of the quo warranto action in the first case for forfeiture of Mountain Grove's charter for exceeding its powers.

There is no error.

In this opinion House, C. J., MacDonald and Longo, Js., concurred.

Bogdanski, J. (dissenting). I cannot agree with the majority conclusion. Both the law and reason compel a different result. "The general rule is that a valid charity is established where the purpose for which it is created is the maintenance or repair of a public cemetery . . . . Ownership of the cemetery by a private corporation does not make this rule inapplicable if the corporation is not for profit and the cemetery is for public use." 15 Am. Jur. 2d, Charities, § 83; see *Hopkins* v. *Grimshaw*, 165 U.S.

342, 352, 17 S. Ct. 401, 41 L. Ed. 739; annot., 47 A.L.R.2d 596, 600. On the other hand, gifts for the maintenance and repair of private burial grounds, lots, or monuments are considered private gifts or trusts and are not classified as charitable. *Hopkins* v. *Grimshaw*, supra, 352; 15 Am. Jur. 2d, supra; Restatement (Second), Trusts § 374, comment h. The reason for the distinction between cemeteries open to the public and private burial grounds is found in the rule that, to be charitable, a gift or trust must be for the benefit of the members of the community generally and not for the benefit of a class of persons. See *Evans* v. *Newton*, 382 U.S. 296, 307–8, 86 S. Ct. 486, 15 L. Ed. 2d 373 (concurring opinion of White, J.), citing 4 Scott, Trusts (2d Ed.) § 368, pp. 2629–30, § 375.2, p. 2715.[1]

The Connecticut cases relied on by the majority have done no more than recognize that distinction. It is true that in *Coit* v. *Comstock*, 51 Conn. 352, 386, this court stated that "bequests for the purpose of keeping burial lots or cemeteries in good order or repair, are not given in charity, and, therefore, are not protected by the statute of charitable uses." That statement, however, was made without any supporting authority and no distinction was made between gifts or trusts for the benefit of the public, i.e., cemeteries open to the public, and gifts or trusts for the benefit of a small class of individuals, i.e., gifts or trusts for the purpose of maintaining a private burial ground or specific burial lots. In *Coit*, supra, the bequests at issue were for the purpose of

---

[1] As pointed out by Justice White in *Evans* v. *Newton*, 382 U.S. 296, 307, 86 S. Ct. 486, 15 L. Ed. 2d 373, trusts for the relief of poverty, the advancement of education and the advancement of religion have long been recognized as beneficial to the community, whether or not immediate benefit is restricted to a relatively small group.

maintaining the burial lots of the testator and his parents, and there was no benefit to members of the public at large. The same was true in *Weed* v. *Scofield,* 73 Conn. 670, 671, 49 A. 22, where the bequest was for the maintenance of the testator's own burial lot in a New York cemetery. The court specifically stated that such a bequest "was made as a trust for a particular purpose, not public or charitable in its nature." *Weed* v. *Scofield,* supra, 679. And, in *Clark* v. *Portland Burying Ground Assn.,* 151 Conn. 527, 532–33, 200 A.2d 468, this court was again confronted with a bequest to maintain one specific burial lot. When the court commented that the bequest in issue was "a clearly noncharitable bequest," it was speaking only of that one particular private purpose, and it was not removing nonprofit cemeteries, open to the public, from the realm of that which is "charitable."

On the contrary, this court has recognized that the burial of the dead is a necessary public service activity essential to preserve the health of the living. *Connecticut College for Women* v. *Calvert,* 87 Conn. 421, 430, 88 A. 633; *Starr Burying Ground Assn.* v. *North Lane Cemetery Assn.,* 77 Conn. 83, 87, 58 A. 467. Thus gifts to cemeteries that are open to the public at large fall squarely within the definition of "charity" set forth in *Mitchell* v. *Reeves,* 123 Conn. 549, 554, 196 A. 785, quoting from *Jackson* v. *Phillips,* 96 Mass. (14 Allen) 539, 556: "A charity, in the legal sense, may be more fully defined as a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, . . . or by erecting or maintaining public buildings

or works or otherwise lessening the burdens of government." Thus a bequest to build a chapel in a cemetery which offers burial lots for sale to the general public, though it is owned by a private corporation, "sufficiently serves public interest so that the bequest is one for a charitable use." *FitzGerald* v. *East Lawn Cemetery, Inc.,* 126 Conn. 286, 291, 10 A.2d 683. It is therefore not surprising that this court has specifically recognized that when title to property passes, by gift or otherwise, to a cemetery association which is open to the public, it passes out of the private domain "and becomes devoted forever to a public charitable purpose." *Corbin* v. *Baldwin,* 92 Conn. 99, 111, 101 A. 834; see *Connecticut College for Women* v. *Calvert,* supra, 439.

The trial court found that Mountain Grove is a public cemetery open to anyone of the public who wishes to be buried there; that it has acquired and developed over 125 acres of land which are held exclusively for cemetery purposes; that that land with improvements thereon located in the city of Bridgeport was assessed on October 1, 1970, at $1,910,820; and that at the tax rate prevailing on October 1, 1970, the yearly taxes on that assessment would be $134,445.81. Every four years, Mountain Grove files tax exemption reports with the city of Bridgeport, the latest of which claimed that its purpose was "to acquire and hold lands for cemetery purposes, to receive gifts, bequests, etc. for its own use and in trust, and to operate a crematory for the human dead." Bequests and legacies to Mountain Grove are exempt from state succession taxes, and it pays no sales taxes on goods purchased for its own use. While Mountain Grove's property tax exemptions are claimed under statutes exempting personal and real property held "exclusively" for

cemetery use; General Statutes §§ 12-81 (11), 12-88; its right to exemption from succession taxes and from sales taxes can only be based on its status as a "charitable" organization. See General Statutes §§ 12-347, 12-412 (h). It is indeed difficult to understand how Mountain Grove can claim succession tax and sales tax exemption as a "charitable organization" and yet assert that it is not charitable in nature for purposes of this case.

The trial court further found that, in 1924, Mountain Grove received a $40,000 bequest for the purpose of erecting an administration building, and that it subsequently received a $55,000 bequest for the purpose of erecting a mortuary chapel. That administration building is now used for the display of the bronze markers at issue in this case. Discussions with customers for the sale of bronze markers may occur anywhere on the grounds or in the facilities of the cemetery, although the actual contract for sale is concluded and processed in the administration building.

Whether inquiry is confined to the two specific legacies discussed above is not important, although I would conclude that both are charitable trusts. As held in *Corbin* v. *Baldwin,* supra, all of the property held by Mountain Grove has passed out of the private domain and is being held forever for a "public charitable purpose." Under the statutes of charitable uses and charitable trusts, such property "shall forever remain to the uses and purposes to which it has been granted according to the true intent and meaning of the grantor and to no other use." General Statutes § 45-79, and see § 47-2.

The question remaining is whether the sale of bronze markers is an activity which is reasonable or

necessary for the maintenance and repair of a public burial ground which is classifiable as a charitable organization and which receives numerous tax exemptions because of that status. I would conclude that this commercial activity is neither reasonable nor necessary. The sale of markers "is a separate and distinct function appropriately left to private enterprise"; *Morrison* v. *City of Portland,* 286 A.2d 334, 336 (Me.); and "is not necessary to the procuring, sale, holding and use of land exclusively as a burial ground." *Frank* v. *Clover Leaf Park Cemetery Assn.,* 29 N.J. 193, 203, 148 A.2d 488. I would therefore conclude that the sale of bronze markers by Mountain Grove violates §§ 45-79 and 47-2 of the General Statutes.

Such a conclusion is in accord with the tax exemption cases wherein charitable organizations have been refused exemptions for activities and uses which are commercial in nature and which are not in furtherance of the charitable purpose for which the organization was created. See *St. Bridget Convent Corporation* v. *Milford,* 87 Conn. 474, 88 A. 881; *Yale University* v. *New Haven,* 71 Conn. 316, 42 A. 87.

The majority concedes that the sale of bronze markers is not necessary for the operation of a cemetery. Mountain Grove relies, instead, for its right to sell bronze markers, upon a 1969 amendment to its charter which provides that it may "buy and sell such articles of personal property as may be necessary or proper for the operation and maintenance of the cemetery." Specifically, it relies upon the phrase "necessary or proper" as giving it that right.

The addition of the word "proper" in the amendment adds nothing to Mountain Grove's powers. The meaning of the word "proper" is not immediately apparent and is, at best, ambiguous. Does it mean "precisely applicable or pertinent," "entirely in accordance with authority, observed facts, or other sanction," "marked by suitability, fitness, accord, compatibility," or "well-formed and handsome"? Webster, Third New International Dictionary, "Proper." "[T]he meaning of doubtful words may be determined by reference to their association with other associated words and phrases. Thus, when two or more words are grouped together, and ordinarily have a similar meaning, but are not equally comprehesive, the general word will be limited and qualified by the special word." 2A Sutherland, Statutory Construction (4th Ed.) § 47.16; see also *Griffin* v. *Fancher,* 127 Conn. 686, 690, 20 A.2d 95. It follows that the word "necessary" limits and qualifies the word "proper" and should not advantage Mountain Grove.

To allow a public cemetery association to engage in any "proper" activity which provides a service and makes a profit would result only in creating tax exemption problems for the courts and unfair competition to private business. True, it would be convenient for mourners to have a gasoline station and food and accommodation services on the cemetery grounds. Such services might even be considered "proper." They could hardly, however, be considered necessary for the operation of the cemetery. Other services might include a floral shop, a funeral home,[2] and even an attorney's office. These, too,

---

[2] The operation of funeral homes and the sale of funeral merchandise on any cemetery or tax-exempt property is expressly prohibited by § 20-230 of the General Statutes.

would provide some convenience and turn a profit. But, again, they could not be said to be necessary. Such activities as well as the sale of bronze markers should be left to private, tax-paying businesses.

Moreover, such commercial activity constitutes a misuse of tax exemptions and does injury to the tax base of local communities. Mountain Grove saves $134,445.81 per year in Bridgeport real estate taxes alone. It is against public policy to require the city of Bridgeport and the state of Connecticut to subsidize Mountain Grove in its efforts to profit on its competitive advantage over private enterprise.

I would, therefore, set aside the judgment and order a remand with direction to render judgment for the plaintiff.