CONNECTICUT NATIONAL BANK, EXECUTOR (ESTATE OF ELBERT S. OVERBAUGH) *v.* COMMISSIONER OF REVENUE SERVICES
(13417)
(13418)

PETERS, C. J., HEALEY, CALLAHAN, GLASS and HULL, Js.

Argued October 12—decision released December 20, 1988

*William J. Friedeberg,* tax attorney II, with whom, on the brief, were *Joseph I. Lieberman,* attorney general, *Albert E. Sheary,* first assistant commissioner of revenue services, and *Frank P. Iodice,* for the appellant in the first case (defendant commissioner of revenue services).

*David E. Ormstedt,* assistant attorney general, with whom, on the brief, was *Joseph I. Lieberman,* attorney general, for the appellant in the second case (defendant Joseph I. Lieberman).

*Peter T. Mott,* with whom was *Edward J. Kelleher* for the appellee in both cases (plaintiff).

HULL, J. This case raises the narrow issue of whether bequests to a nonprofit cemetery association for its corporate purposes are exempt from the Connecticut succession tax. After the Fairfield Probate Court denied the exemption, the plaintiff executor appealed to the Superior Court, which reversed the Probate Court and found the bequests to be exempt. The defendants, the commissioner of revenue services and the attorney general, filed separate appeals which were heard together. The commissioner claims that the court erred in find-

ing, pursuant to General Statutes § 12-347, that (1) a cemetery association is a charity exempt from succession tax, and (2) bequests to a cemetery association are exempt as a transfer "in trust for the care of any cemetery lot." The attorney general claims error only on the first basis assigned by the commissioner. We find error.

The history of this litigation is not in dispute. The plaintiff is the executor of the estate of Elbert S. Overbaugh. Under Overbaugh's will a bequest of $20,000 was made to the Oak Lawn Cemetery Association (cemetery association) of Fairfield with the income therefrom to be used for the cemetery association's "general corporate purposes." Further, one fifth of the decedent's residuary estate was bequeathed to the cemetery association for its "corporate purposes." The taxable value of the two bequests totals $178,761.62. The plaintiff filed a succession tax return claiming that the bequests to the cemetery were exempt from the succession tax pursuant to General Statutes § 12-347 (a).[1] The commissioner designated the cemetery association as a Class C beneficiary not exempt from the succession tax, and claimed additional tax and interest due in the amount of $21,371.56. The Probate Court upheld the commissioner's computation of the tax and denied the succession tax exemption on the ground that "the cemetery was not organized and operated exclusively for charitable purposes." The appeal to the Superior Court followed.

The case was tried on the following stipulated facts. Oak Lawn Cemetery Association was organized in 1865

---

[1] General Statutes § 12-347 (a) provides in pertinent part: "There shall be exempt from the tax imposed by this chapter all transfers to or for the use of . . . any corporation, institution, society, association or trust, incorporated or organized under the laws of this state . . . formed for charitable, educational, literary, scientific, historical or religious purposes . . . and any transfer to any person, association or corporation in trust for the care of any cemetery lot."

as a stock corporation under the general laws of Connecticut. The cemetery association was created in order to establish a public cemetery and to provide for its maintenance. The Articles of Association state: "All stockholders shall be entitled to receive dividends on all shares subscribed and paid for by them which dividends shall be paid out of the revenues arising from the sale of lots, until such dividends shall amount to the principal and interest of the same so subscribed and paid in. And after the sum subscribed and paid in shall have been thus repaid to the stockholders, all future revenue of the association shall be forever sacredly devoted to the improvement or extension of the said cemetery and to create a fund for the protection of these grounds forever." The capital stock was retired and paid in full in 1873, since which time the cemetery association has consisted of lot owners. It has no religious affiliation. It has a policy of charging a reduced fee to families for the burial of indigents.

The trial court ruled that the cemetery association was founded for a charitable purpose and that the bequests were to be used for charitable purposes, and that the bequests therefore were exempt from the succession tax. The court also stated: "Even though the aforementioned reasons support the finding of exemption in this case, the Court would reach the same and by another clause of Section 12-347. That section exempts 'any transfer to any person, association or corporation in trust for the care of any cemetery lot.' Although the Commissioner argues that the use of the word 'any' restricts the use of this exemption to a particular cemetery lot and not to a cemetery association, which manages many cemetery lots, the Court does not believe that the Legislature intended such a result."

We may summarily dispose of the trial court's conclusion set forth in its memorandum of decision that it would reach the same conclusion, favoring succes-

sion tax exemption, because of the last clause of § 12-347 (a). It is beyond dispute that a transfer in trust for the care of any cemetery lot is exempt under that clause. We further note that General Statutes § 12-350 (e) provides for a deduction from a gross taxable estate for "funeral expenses and all amounts actually expended or to be expended for a headstone or monument or the care of any cemetery lot." The plaintiff argues that since the revenue received by the cemetery association from the bequests of the decedent must be applied toward the maintenance of the cemetery, a gift for the general use of the association is equivalent to a gift for the care of any lot. Such reasoning stretches the meaning of the exemption beyond the breaking point. The bequests involved in this case are for the cemetery association's "general corporate purposes" and "corporate purposes." General Statutes § 1-1 (a) provides that "[i]n the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language . . . . " " '[I]n the absence of ambiguity, courts cannot read into statutes, by construction, provisions which are not clearly stated; *Point O'Woods Assn., Inc.* v. *Zoning Board of Appeals,* 178 Conn. 364, 366, 423 A.2d 90 (1979); but must ascribe plain and ordinary meaning to the language used. *Mazur* v. *Blum,* 184 Conn. 116, 118, 441 A.2d 65 (1981); *Jones* v. *Civil Service Commission,* 175 Conn. 504, 509, 400 A.2d 721 (1978). . . .' " *Hayes* v. *Smith,* 194 Conn. 52, 58, 480 A.2d 425 (1984). "We have consistently held that if a statute is clear and unambiguous, there is no room for construction." *Murray* v. *Lopes,* 205 Conn. 27, 33, 529 A.2d 1302 (1987). We decline to transform the decedent's bequests into a "trust for the care of any cemetery lot." The judgment of the trial court cannot be sustained on such a tenuous basis.

A much more difficult question is raised by the defendants' argument that a public cemetery is not an organization formed for charitable purposes within the meaning of § 12-347 (a). Our analysis of this issue requires a close look at *State ex rel. Willow Monument Works, Inc.* v. *Mt. Grove Cemetery Assn.*, 168 Conn. 447, 362 A.2d 1341 (1975), which the defendants claim is dispositive of this issue.

In *State ex rel. Willow Monument Works, Inc.*, the defendant cemetery association (Mountain Grove), which maintained a public cemetery, sold bronze markers for profit to its lot holders. The plaintiff monument works (Willow Monument) brought an action for forfeiture of Mountain Grove's charter and for an injunction to restrain Mountain Grove from selling bronze markers to its lot holders. Id., 449. In its combined appeal from the judgment rendered for Mountain Grove in each case, Willow Monument claimed that, in its capacity as a public cemetery, Mountain Grove was "a charitable organization devoted to a charitable public use"; id., 450; and that by virtue of the statute of charitable trusts; General Statutes § 45-79;[2] and the statute of charitable uses; General Statutes § 47-2;[3] lands and property owned by Mountain Grove could not be used for commercial purposes, unless reasonably necessary to continue that charita-

---

[2] General Statutes § 45-79 provides: "Any charitable trust or use created in writing or by deed by any resident of the state, or any public and charitable trust or use for aiding and assisting any person or persons to be selected by the trustees of such trust or use to acquire education, shall forever remain to the uses and purposes to which it has been granted according to the true intent and meaning of the grantor and to no other use."

[3] General Statutes § 47-2 provides: "All estates granted for the maintenance of the ministry of the gospel, or of schools of learning, or for the relief of the poor, or for the preservation, care and maintenance of any cemetery, cemetery lot or monuments thereon, or for any other public and charitable use, shall forever remain to the uses to which they were granted, according to the true intent and meaning of the grantor, and to no other use whatever."

ble purpose. Id., 449–51. In evaluating the merits of the plaintiff's claim in *State ex rel. Willow Monument Works, Inc.*, we undertook a detailed historical analysis of the relevant statutory and case law regarding cemeteries in the context of charitable uses and purposes. Ultimately, we concluded: "[O]ur case law and the legislative history of the statute of charitable uses make it clear that in this state the operation of cemeteries is not denominated or considered charitable." Id., 455. In reaching this conclusion, we noted that the provision in the statute of charitable uses concerning grants, devises or bequests to a cemetery merely "prevents such [transfers] from being invalid under the rule against perpetuities but does not make such a transfer a charitable one. Nor does the statute either directly or by implication make the operation of a cemetery a charitable use." Id., 452. Furthermore, we stated that the "public use" aspect of a cemetery, although it might engender special legislative treatment in the form of property tax exemptions and the right of eminent domain, did not "render the use a charitable one or the recipient a charitable entity." Id., 454.

Justice Bogdanski, in a strong dissent, argued that the majority opinion had fallen into error by failing to recognize the widely accepted distinction between cemeteries open to the public, like Mountain Grove, which usually are considered "charitable," and cemeteries consisting of private burial grounds, which are not "charitable." Id., 459–63. There is a good deal of merit in this argument.

Nevertheless, for the plaintiff to prevail in this case we would have to overrule *State ex rel. Willow Monument Works, Inc.* We have repeatedly stated, however, that "[i]f . . . stare decisis is to continue to serve the cause of stability and certainty in the law—a condition indispensable to any well-ordered system of jurisprudence—a court should not overrule its earlier

decisions unless the most cogent reasons and inescapable logic require it." *Herald Publishing Co.* v. *Bill,* 142 Conn. 53, 62, 111 A.2d 4 (1955); see *Ely* v. *Murphy,* 207 Conn. 88, 94–95, 540 A.2d 54 (1988); *Society for Savings* v. *Chestnut Estates, Inc.,* 176 Conn. 563, 570, 409 A.2d 1020 (1979). Although reasonable persons might disagree with the conclusion of the majority in *State ex rel. Willow Monument Works, Inc.,* that cemeteries are not charitable operations, we do not today find before us "the most cogent reasons and inescapable logic" which would compel us to overturn such a recent decision, and we therefore decline to do so. Our refusal today to overrule *State ex rel. Willow Monument Works, Inc.,* is also consistent with this court's repeated acknowledgment of the rule that a statute granting an exemption from taxation should be strictly construed. "Generally, taxing statutes are strictly construed. *Caldor, Inc.* v. *Heffernan,* 183 Conn. 566, 571, 440 A.2d 767 (1981); *Naylor* v. *Brown,* 166 Conn. 581, 587, 353 A.2d 709 (1974). 'Any statute creating a tax exemption must likewise be strictly construed against the party claiming an exemption.' *Caldor, Inc.* v. *Heffernan,* supra; see *Connecticut Theater Foundation, Inc.* v. *Brown,* 179 Conn. 672, 677, 427 A.2d 863 (1980); *Crescent Beach Assn.* v. *East Lyme,* 170 Conn. 66, 71, 363 A.2d 1045 (1976)." *White Oak Corporation* v. *Department of Revenue Services,* 198 Conn. 413, 421, 503 A.2d 582 (1986).

Having thus declined to overrule *State ex rel. Willow Monument Works, Inc.,* we find that our holding in that case is dispositive of the issue now before us. We conclude, therefore, that the bequests of the decedent Elbert S. Overbaugh to the cemetery association do not qualify as transfers to a charitable organization within the meaning of General Statutes § 12-347 (a) and, consequently, such bequests are not exempt from state succession taxes.

There is error, the judgment is set aside and the case is remanded with direction to dismiss the plaintiff's appeal.

In this opinion the other justices concurred.