Argued April 26, affirmed June 2, 1960

# SCHAEFER *v.* WEST LAWN MEMORIAL CEMETERY ET AL

352 P. 2d 744

242

*Douglas R. Spencer,* Eugene, argued the cause for appellant. On the brief were Bailey, Hoffman & Spencer, Eugene.

*W. D. Von Otterstedt,* Eugene, argued the cause for respondent. On the brief were Husband and Johnson, Eugene.

Before McALLISTER, Chief Justice, and ROSSMAN, PERRY and HARRIS, Justices.

PERRY, J.

The plaintiff is the owner of two cemetery lots purchased in December, 1954, from the defendants. The conveyance he received contains this recital: "these lots are in a restricted area and markers must be purchased through the cemetery." This recital conforms with a prior regulation of the cemetery association.

The defendant West Lawn Memorial Cemetery is a non-profit association, incorporated under the laws

of the state of Oregon in October, 1947. The other defendants named herein are officers of said association. In this opinion we will refer to the defendants as the "association."

The cemetery grounds consist of an old section and a new section. In the old section the markers may be of any material, size and style, and a lot owner may purchase them directly from any manufacturer.

The new section is apparently of the lawn type, providing for perpetual care of the burial area by the association, and a sinking fund is provided for this purpose. The association's regulations require that all grave markers in the new section be set flush with the surface of the ground, be uniform as to size, either 12 inches by 24 inches or 12 inches by 48 inches, and be of cast bronze or granite. The regulations further provide, as was set out in plaintiff's conveyance, that all markers must be purchased through the association.

We are concerned in this suit only with the regulations affecting the new section of the cemetery.

In March, 1957, plaintiff purchased from Eugene Granite and Marble Works a stone to be set as a marker for a grave on one of the plaintiff's lots. The marker in all respects met the uniform requirements of the association, but placement upon the lot was refused because the marker was not purchased through the association.

The plaintiff brought this suit to restrain the association from refusing to permit the setting and use of the purchased monument. From an adverse decree of the trial court plaintiff has appealed.

The evidence discloses that this same monument which plaintiff purchased could be delivered and set

by the marble works in the Eugene vicinity for $80 and would cost $92.75 if purchased through the association. The lot owner is not restricted in his selection of the manufacturer, but the purchase from the manufacturer selected must be made by and through the association. The association does not manufacture markers, but, when not directed otherwise by the purchaser of a lot, obtains them wholesale from the manufacturer. If the owner of the lot does not express his preference as to the manufacturer, the association makes the selection itself.

The defendant cemetery association was incorporated October 16, 1947, under § 99.1901, et seq., OCLA, which was revised in 1953, and at the time the plaintiff purchased the lots December 13, 1954, was ORS 64.010, et seq., the pertinent parts of which read:

ORS 64.040 (now ORS 61.755):

"The association may purchase or take * * * and hold lands exempt from execution and taxation * * * and may sell it in lots, if intended to be used exclusively for burial purposes, and in no wise with a view to the profit of the members of such association * * *."

ORS 64.050 (now ORS 61.760):

"The association may, by its bylaws, provide that a stated percentage of the money received from the sale of lots, donations or *other sources of revenue* shall constitute an irreducible fund * * *. After paying for the land, all future receipts and income of the association, * * * whether from the sale of lots, donations, rents *or otherwise,* shall be applied exclusively to laying out, preserving, protecting and embellishing the cemetery * * *." (Italics ours)

ORS 97.710:

"(1) The cemetery authority may make and enforce rules and regulations for:

"(a) the use, care, control, management, restriction and protection of its cemetery;

"* * * * *

"(c) Regulating the uniformity, class and kind of all markers, monuments and other structures within its cemetery;

"* * * * *

"(j) All other purposes deemed necessary by the cemetery authority for proper conduct of its business and the protection and safeguarding of the premises and the principles, plans and ideals on which the cemetery was organized."

■ The conveyance of a cemetery lot does not vest in the grantee a fee simple title, but rather a right in realty which is *sui generis* (unique in itself). Principally, it grants to the purchaser the right of burial therein exclusive of others, and a right to the living "to express their affection and respect for those dead by marking and decorating the place of interment." *Mansker v. Astoria,* 100 Or 435, 454, 198 P 199.

These rights, however, are deemed by the courts to be subject to reasonable rules and regulations by a cemetery association. *Mansker v. Astoria,* supra.

The plaintiff in this case agreed when he purchased these lots to purchase the markers used thereon through the association. He makes no complaint as to the reasonableness of the requirement that the markers should be of certain material, uniform in size and shape and set flush with the ground. His quarrel is with the requirement that they be purchased through the association. Plaintiff states this requirement is an unreasonable regulation, lies beyond the powers

granted the association, i.e., *ultra vires,* and is in restraint of trade.

As pointed out in the case of *Mansker v. Astoria,* supra, 100 Or 435, 455, "* * * The authorities agree that all rules and regulations adopted by the proprietor of the cemetery must be equal, uniform and reasonable. * * * The authorities do not always agree, however, that a given rule is reasonable."

If the requirement of the purchase of a marker through the association is such that it would deprive the purchaser of the right to properly mark the grave of loved ones, there can be little question but that any court would consider this regulation unreasonable and unenforcible.

The representatives of the association testified, in general, that the income received through this requirement was placed in a fund to provide for perpetual care of the lots in the new portion of the cemetery and, also, that requiring the purchase to be made through the association assured the uniformity of the markings placed upon the lots.

There is no evidence that the slight difference in charge made by purchasing through the association instead of directly from the manufacturer was, as to amount, unreasonable. Nor do we think this slight charge can be used as a guise to state that as such it would deprive an owner of properly marking the graves of loved ones.

The Pennsylvania Superior Court in *Dries v. Evans Cemetery Co.,* 109 Pa Super 498, 502 (1933), 167 A 237, 239, aptly stated:

"We must, of course, start out with the proposition that the people to decide this matter, in the first instance, are the trustees of the cemetery, for they are responsible for maintaining the trust and

for keeping the cemetery in a proper condition and the exercise of these responsibilities must not be too minutely scrutinized."

There is no evidence in this case that this increment to the perpetual care fund is not now necessary or that it might not become necessary in the foreseeable future to maintain the cemetery, which includes maintaining the memorials erected thereon, in a "proper condition" as required of the association under its trust. ORS 97.810.

The plaintiff relies upon *Scott v. Lakewood Cemetery Assn.*, 167 Minn 223, 208 NW 811, 47 ALR 64, and the cases cited therein as authority for his position that the regulation of this association is unreasonable. This case and those of similar import do not touch upon the question raised here. In the cases relied upon by plaintiff, the question was whether or not the purchaser of the lot could cause the graves of his loved ones to be tended and cared for or decorated by people of his own choosing rather than hire the services of the cemetery association. The basis of all of these opinions may be summed up in the language of *Ex Parte Adlof*, 86 Tex Crim Rep 13, 17, 18, 215 SW 222:

"* * * All expressions from the courts, as far as they have come to our notice, seem to recognize the fact that a cemetery is not only a place where the dead may be buried, but it is also one in which the living may give expression to their affection and respect of the dead by marking and decorating the place of interment and beautifying its surroundings. In other words, the right to enter the grounds for the purpose of burying the dead under reasonable restrictions and regulations is accompanied by the right to care for the grave subject to like reasonable regulations.

"* * * * * *

"We believe that one having the right of sepulture, desiring to mark or beautify the grave, * * * may exercise the privilege * * * either in person or through the agency of another of his own selection, * * *."

■ In the matter before us, the purchaser of a lot is permitted to select the marker from any manufacturer of his choice, the only requirement being that the order shall be placed through the association. The deed advised the purchaser he was required only to purchase through the association, not from it.

We are unable to see how this requirement interferes in anywise with the rights of a purchaser to express his affection and respect for the dead.

In final analysis, the question of the reasonableness or unreasonableness of the association's requirement is only economic. It poses only the question of whether or not it is an undue restriction upon the rights of a purchaser of a burial plot that the cemetery association can receive some income from the purchaser placing markers on the graves in the cemetery. This certainly does not invade the right of a purchaser to select a manufacturer of his choice to mark and decorate the graves on the lot. We are of the opinion this is not an unreasonable regulation.

■ It may be, the association in establishing its rule believed that in addition to securing uniformity it was necessary, in order to properly provide for the care of the cemetery, to augment the trust fund in this manner. Even if this was so, it is not permissible for this court to substitute its business judgment for that of the proprietors. *West View Corp. v. Alston*, 208 Ga 122, 65 SE2d 406; *Roanoke Cemetery Co. v. Goodwin*, 101 Va 605, 44 SE 769.

Also, there can be no question but that the plain-

tiff knew that he was agreeing to pay a retail, not a wholesale, price for markers when he purchased these lots in the restricted portion of the cemetery. Having agreed to this arrangement, we are unable to see wherein he may complain so long as the price to be paid is reasonable and does not appear to be for the arbitrary purpose of preventing him from expressing his affection and respect for the dead.

■ There is no showing in the record of this case that the plaintiff has any standing in the courts to assert the association is acting beyond the corporate powers granted to it as a cemetery association. ORS 61.065.

It is also clear from the facts of this case as recited herein that there is no merit in the plaintiff's contention that the enforcement of the regulation complained of is in restraint of trade.

The decree of the trial court is affirmed.