Argued March 9, reversed and remanded June 20, 1978

# BASH, *Appellant,*
## *v.*
# FIR GROVE CEMETERIES, CO., *Respondent.*
### (TC 76-0026, SC 25121)
581 P2d 75

E. Scott Lawlor, Eugene, argued the cause for appellant. With him on the brief was McCoy & Lawlor, Eugene.

Randall Bryson, Eugene, argued the cause for respondent. With him on the brief were Calkins & Calkins and Bryson & Bryson, Eugene.

Before Denecke, Chief Justice, and Tongue and Linde, Justices, and Thornton, Justice Pro Tempore.

THORNTON, Justice Pro Tempore.

**THORNTON, J.,** Pro Tempore.

This case involves an action brought by plaintiff against defendant cemetery corporation to recover damages for the unauthorized handling of her husband's remains. She appeals from an adverse judgment entered after a jury rendered a verdict for the defendant. She assigns as error the court's instruction to the effect that disinterments could be performed by the cemetery where the spouse has by her statements or conduct led the cemetery to conclude that it had the right to disinter remains without the written consent of the spouse or without court order. Three issues are raised on appeal: (1) Are the provisions of ORS 97.220(1)[1] mandatory or permissive; (2) if ORS 97.220(1) is mandatory, is the requirement for written consent satisfied by a signed contract incorporating by reference the cemetery's rules and regulations which permit the unauthorized movement of remains; and (3) was plaintiff estopped from claiming she did not consent to the disinterment of her husband's remains.

Plaintiff's husband, Robert P. Bash, died on April 4, 1975. On April 5, 1975, plaintiff's son, on plaintiff's behalf, purchased from defendant two cemetery lots, lot 7 for plaintiff's late husband and lot 9 for plaintiff.[2]

---

[1]ORS 97.220(1) reads:

"The remains of a deceased person interred in a plot in a cemetery may be removed therefrom with the consent of the cemetery authority and written consent of the person who has the right to control the disposition of the remains of the deceased person. If the consent of any such person or of the cemetery authority cannot be obtained, permission by the county court or the board of county commissioners of the county where the cemetery is situated is sufficient. Notice of application to the court for such permission must be given at least 60 days prior thereto, personally or by mail, to the cemetery authority, to the person not consenting and to every other person or authority on whom service of notice is required by the county court or the Board of county commissioners."

[2]The purchase agreement provided in part:

"_____ Duly authorized person in charge of Cemetery arrangements for the above deceased, do hereby agree and bind all

The two lots were separated by lot 8, in which a great grandchild who had died two years earlier was supposedly buried.

Sometime after the burial of plaintiff's husband, defendant discovered that the great grandchild had been mistakenly buried in lot 7 and that plaintiff's decedent had been buried in lot 6, which was owned by unrelated third parties. The manager of the cemetery, Wallace Robertson, informed plaintiff of the situation when plaintiff and her daughter were at the gravesite and indicated to them that the body would have to be moved. Robertson claimed, and plaintiff denied, that plaintiff at that time gave oral permission for the disinterment and relocation. Robertson also testified that later on the same day plaintiff's daughter called him and told him to delay the disinterment for a few days, so that the family could think it over. After waiting for two to three weeks, and hearing nothing

---

heirs in selecting a plot and services in the Fir Grove Cemetery, to all Rules and regulations of the Fir Grove Cemetery."

Rule 7 of the Rules and Regulations of Fir Grove Cemeteries, Co., provides in part:

"* * * The provisions of said laws and any subsequent amendment or amendments thereto are hereby by reference incorporated herein and made a part of these rules and regulations. The first being ORS 97.010 through 97.990."

Rule 10 provides:

"The Cemetery reserves, and shall have the right to correct any errors that may be made by it, either in making interments, disinterments or removals, or in the description, transfer or conveyance of any interment property, either by cancelling such conveyance and substituting any conveying in lieu thereof other interment property of equal value and similar location as far as possible or as may be selected by the Cemetery, or, in the sole discretion of the cemetery, by refunding the amount of money paid on account of said purchase. In the event such error shall involve the interment of the remains of any person in such property, the Cemetery reserves, and shall have the right to remove or transfer such remains, so interred, to such property of equal value and similar locations as may be substituted and conveyed in lieu thereof. The Cemetery shall have the right to correct any errors made by placing an improper inscription, including the incorrect name or date, either on the Memorial or on the container for cremated remains."

[ 680 ]

further, Robertson had the decedent's remains moved to lot 8.

Plaintiff contends that the trial court erred in giving the following instruction:

"You are instructed that Oregon statute provides the authority for cemeteries to make their own rules and regulations for the regulation of their cemeteries.

"You are instructed that while rules and regulations may be made, they are not binding upon a party with regard to disinterment and movement of a deceased unless through agreement or otherwise such a party has consented to the disinterment and movement of a deceased.

"Defendant has alleged an affirmative defense. If you find by a preponderance of the evidence that after plaintiff was informed of the appropriate movement of her husband's remains she, by her statements or conduct towards the officer, led him to reasonably conclude that he had the right to remove the remains, and further, that defendant's officer relied upon such statements and conduct in moving the remains, then plaintiff would be bound by such statements or conduct and could not recover based upon her claim of unauthorized handling of remains."

The challenged instruction is really a combination of two instructions; one requested by the plaintiff and the other by defendant. The first part of the instruction relating to the effect of a cemetery's rules and regulations is an altered version of an instruction requested by plaintiff, and the second part relating to defendant's affirmative defense was taken from a defendant's requested instruction.

Defendant contends that plaintiff failed to properly except to the two instructions at trial and therefore cannot contest them on appeal. In order to determine whether defendant's claim is valid, it is necessary to recount the procedures by which the instructions were given and the exceptions were taken.

In this case the trial court, after an off-the-record discussion of instructions, instructed the jury prior to

argument. After so instructing, the judge permitted the parties to take exceptions, although he indicated that they would have another opportunity to take exceptions after the final charge to the jury. Plaintiff's attorney made the following exceptions:

"THE COURT: * * * So, would you like to take exceptions at this particular time?

"MR. LAWLOR [Plaintiff's counsel]: Yes, to plaintiff's requested number six, a portion of it that was given. I'll read the full thing in the way I had it proposed.

"THE COURT: Very well.

"MR. LAWLOR: 'You are instructed that Oregon law provides the authority for cemeteries to make their own rules and regulations for the regulation of their cemeteries. You are instructed that cemeteries may not make their own rules and regulations concerning disinterments. Disinterments are covered by the statutes of the State of Oregon as stated earlier.'

"I believe the Court did not give the final two sentences of that instruction.

"THE COURT: That is correct, and in its place I put in the sentence 'you are instructed although rules and regulations may be made, they are not binding upon a party with regard to disinterment and movement of a deceased unless through agreement or otherwise such a party has consented to the disinterment and movement of a deceased.

"MR. LAWLOR: All right. Concerning defendant's requested instruction number three on the affirmative defense, I believe the Court read 'that after plaintiff was informed of the proposed movement of her husband's remains, she or her attorney (sic)' — or, 'she, by her statements or conduct.' I think the Court included the word 'conduct' in there. We had earlier talked about that, and it's my objection that by using the word 'conduct' there, and later on in that particular instruction, you are, in effect, instructing the jury that not only can a defendant, or the plaintiff in this case give up her rights as protected by law concerning the rights to disinterment by her consent. She can also do it by conduct, and that is a little bit different than the other instructions, and I think it could be confusing to the jury.

[ 682 ]

"THE COURT: Perhaps the word should have been 'and' rather than 'or'.

"MR. LAWLOR: I think 'conduct' should have been stricken."

The following day immediately prior to closing argument further discussion was had in regard to instructions, in particular defendant's exception to an instruction given by the trial court. After discussing that matter the following exchange took place:

"THE COURT: * * * Anything else we need to take up prior to?

"MR. LAWLOR: There is one other matter I would like to bring up, and it was an oversight on my part. I would like to move to strike all the plaintiff's (sic) second cause of action based on my theory of the case—I mean, defendant's first affirmative defense based upon my theory of the case that ORS 97.220 strictly applies, and that statute has to be followed, and we had talked in chambers concerning the instructions, but I would formally at this time make that motion, that all of the affirmative defense be stricken.

"THE COURT: And I would deny that particular motion.

"Again, it is difficult to ascertain exactly what the effect of the particular statute is. It did appear to be of a permissive nature. The question is the reasonableness as to whether, in fact, it can be modified by the circumstances, and that is the direction that I have taken. Now, whether that is a correct interpretation certainly remains to be seen."

No further exceptions were taken by the plaintiff.

Defendant argues that the second exchange between the court and the plaintiff's counsel quoted above relates solely to the motion to strike, and cannot be relied upon to expand the grounds upon which plaintiff based his exception to the challenged instruction. We disagree. The purpose of requiring specific exceptions is to insure that the trial court is apprised of all of a party's contentions and the reasons therefor so that the trial judge can make an informed decision. *Kinney v. General Construction Co.,* 248 Or 500, 503, 435 P2d 297 (1968). The decision on plaintiff's motion

[ 683 ]

to strike defendant's affirmative defense would affect the content of the instructions to the jury on that issue. Therefore it is clear that the trial court was given "ample opportunity to correct the error before the jury considered the case." *Boner v. Matthews,* 225 Or 500, 502, 358 P2d 285 (1961). We conclude that the trial court, in this instance, was adequately informed that plaintiff's motion related to instructions as well, and that plaintiff preserved his exception, on the grounds now argued, for appeal.

Plaintiff contends that ORS 97.220(1) is mandatory and provides the only means by which a cemetery can effect the disposition of interred bodies. Defendant appears to argue that the statute does not provide an exclusive listing of methods whereby human remains may be disinterred. In support of its position defendant claims that use of the words "may be removed" indicates a legislative intent to make the provisions of ORS 97.220(1) permissive and nonexclusive.

■■ The law recognizes, independent of statute, a legal right in the surviving spouse to have the remains of the deceased undisturbed unless such disinterment is authorized by the surviving spouse. *Hovis v. City of Burns,* 243 Or 607, 415 P2d 29 (1966); P. Jackson, The Law of Cadavers 178-80 (2d ed 1950). The interest of the survivors, as well as society, in the undisturbed rest of the dead, is an interest long recognized in our law and in the law of other cultures. P. Jackson, *supra* at 101-05. The right protected is not a property right, but simply an interest in the prevention of wrongful interference with the corpse and its burial plot. *Pilloud et ux v. Linn-Benton Park Ass'n,* 228 Or 324, 331, 365 P2d 116 (1961).

■ The Oregon statutes governing the disposition of human remains recognize and protect the same interests. ORS 97.130[3] provides that unless the decedent

---

[3]ORS 97.130 provides as follows:

"(1) Subject to the provisions of ORS 97.250 to 97.290, any of the following persons, in order of priority stated, when persons in prior

has otherwise provided, the surviving spouse is vested with the right to control the disposition of the remains of the decedent. ORS 97.220 provides the means by which movement of remains shall be authorized. These statutory provisions and others are made mandatory by ORS 97.120.[4] The only exceptions are listed in ORS 97.020, and those listed must meet the common law requirements for movement of bodies. *See, Hovis v. City of Burns, supra.* Therefore, we conclude that the provisions of ORS 97.220(1) provide the only methods by which defendant in this case could have obtained authorization for the disinterment of the decedent's remains.

■ Having concluded that the requirements of ORS 97.220(1) are mandatory, it must be determined whether the plaintiff gave written consent to her husband's disinterment by agreeing to abide by the rules and regulations of the defendant cemetery. Defendant correctly notes that ORS 97.710[5] vests with

---

classes are not available at the time of death, and in the absence of actual notice of opposition by a member of the same or a prior class, shall have the right to control the disposition of the remains of a decedent:

"(a) The spouse.

"(b) A son or daughter 18 years of age or older.

"(c) Either parent.

"(d) A brother or sister 18 years of age or older.

"(e) A guardian of the decedent at the time of his death.

"(f) A person in the next degree of kindred.

"(2) Subject to the provisions of ORS 97.250 to 97.290, if disposition of the remains of a decedent has not been directed and authorized under subsection (1) of this section within 10 days after the date of the death of the decedent, a public health officer, the special administrator or the personal representative of the estate of the decedent may direct and authorize disposition of the remains."

[4] ORS 97.120 provides:

"A cemetery authority shall deposit or dispose of human remains as provided by ORS 97.010 to 97.040, 97.110 to 97.450 and 97.510 to 97.730, 97.810 to 97.920 and 97.990."

[5] ORS 97.710(1)(j) provides:

"(1) The cemetery authority may make and enforce rules and regulations for:

the cemetery the power to make rules and regulations governing the operation of the cemetery. Such rules and regulations may be revised or amended and they must be available for inspection in the office of the cemetery authority. ORS 97.710(2) and (3). The rules and regulations, however, must be reasonable, *Schaefer v. West Lawn Memorial,* 222 Or 241, 352 P2d 744 (1960); *Mansker v. Astoria,* 100 Or 435, 198 P 199, 199 P 381 (1921), and a person's agreement to be bound by the rules and regulations of a cemetery is ineffectual if the given rule is unreasonable. *Mansker v. Astoria, supra.*

■ We conclude that the rule in question, and plaintiff's agreement to be bound thereby, is ineffectual to operate as a written consent under ORS 97.220(1). ORS 97.710 does not give the cemetery authority or power to make rules or regulations contravening the requirements of ORS 97.220(1). As already noted, ORS 97.120 requires compliance with the provisions of ORS 97.220. Where a statute specifically covers a certain class of activities, in this case disinterment of human remains, it controls over a statute that by its general provisions covers the same activities. *State v. Pearson,* 250 Or 54, 440 P2d 229 (1968); *Colby v. Larson,* 208 Or 121, 297 P2d 1073, 299 P2d 1076 (1956). Therefore, a cemetery may not promulgate a rule or regulation that does not comport with the requirements of ORS 97.220.[6] This is not to say that persons purchasing cemetery lots may not give advance consent to disinterment and relocation, but such consent may not be obtained through agreement to mandatory regulations

---

"* * * * *

"(j) All other purposes deemed necessary by the cemetery authority for the proper conduct of its business and the protection and safeguarding of the premises and the principles, plans and ideals on which the cemetery was organized."

[6]It may be that the enforcement of Rule 10 as a part of the purchase agreement would also be unconscionable under an "adhesion contract" or "uncommunicated terms" theory, but we decline to reach that question because it was not raised by the plaintiff at trial or on appeal.

[ 686 ]

that are violative of ORS 97.220 and were not before the purchaser and called to his attention at the time he signed the agreement.

■■ Finally, defendant argues that the challenged instruction relating to its affirmative defense of estoppel was proper because plaintiff may be estopped from relying upon ORS 97.220(1) where her conduct led defendant to reasonably believe that it was authorized to move the decedent's remains. The essential elements of estoppel are set out in *Bennett v. City of Salem et al.,* 192 Or 531, 541, 235 P2d 772 (1951), as follows:

> "To constitute an equitable estoppel, or estoppel by conduct, (1) there must be a false representation; (2) it must be made with knowledge of the facts; (3) the other party must have been ignorant of the truth; (4) it must have been made with the intention that it should be acted upon by the other party; and (5) the other party must have been induced to act upon it. * * *"

The doctrine of estoppel is only intended to protect those who materially change their position in reliance upon another's acts or representations. *Commercial Securities, Inc. v. Hall,* 140 Or 644, 15 P2d 483 (1932); *First National Bank v. Stretcher,* 169 Or 532, 129 P2d 830 (1942). Estoppel may be established only where there was a right of reliance upon the act of the party sought to be estopped, *Willis v. Stager,* 257 Or 608, 619, 481 P2d 78 (1971), and such reliance was reasonable. *Community Bank v. Jones,* 278 Or 647, 672, n 11, 566 P2d 470 (1977).

■ In the instant case the controlling statute, which was incorporated into defendant's rules and regulations, provided for one type of consent for disinterment, and that was written consent, ORS 97.220(1). Defendant had no right to rely upon any other type of consent.

The trial court's instruction informing the jury that: (1) oral consent or conduct of the plaintiff could justify defendant's actions and (2) the defendant could

promulgate rules in contravention to ORS 97.220(1) that are binding on plaintiff, was in error.

Reversed and remanded.