Argued and submitted May 11, affirmed November 21, 1984, reconsideration denied February 15, petition for review denied March 26, 1985 (299 Or 31)

# JOHNSON,
*Appellant,*

*v.*

# KENTNER et al,
*Respondents.*

## (31309; CA A28913)

691 P2d 499

James O. Goodwin, West Linn, and Graham Walker, Portland, argued the cause and filed the briefs for appellant.

Michael A. Lehner, Portland, argued the cause and filed the brief for respondents.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

WARDEN, J.

## WARDEN, J.

Plaintiff brought this action for damages for personal injuries approximately three years after he was involved in a snowmobile accident. The trial court granted defendants' motion for summary judgment on the basis that the Statute of Limitations bars plaintiff's claim. The issues on appeal concern the notice provisions of ORS 12.155, estoppel as a bar to defendants' reliance on the Statute of Limitations and defendants' entitlement to a separate trial on that defense. We affirm.

As the parties seeking summary judgment, defendants have the burden of proving that there is no material issue of fact and that they are entitled to judgment as a matter of law. ORCP 47C. We view the record in the light most favorable to the party opposing the motion. *Seeborg v. General Motors Corporation,* 284 Or 695, 588 P2d 1100 (1978). The following facts are taken from plaintiff's affidavit and the depositions of plaintiff, plaintiff's attorneys and defendants' insurer's adjuster.

On January 13, 1979, plaintiff sustained personal injuries when he was involved in an accident with a snowmobile that was owned by defendant Burdine and operated by defendant Kentner. At the time of the accident, Burdine had in effect a contract of insurance that was issued by Oregon Mutual Insurance Company (Mutual). Mutual, represented by adjuster Story, assumed responsibility to investigate and handle the claim.

Two days after the accident, Story contacted plaintiff and indicated that Mutual would advance some monies for his medical bills and lost wages. On February 1, 1979, in making the first advance payment, Mutual, pursuant to ORS 12.155(1), notified plaintiff that January 12, 1981, was the date of expiration of the period of limitations for commencing an action for damages. Mutual continued to make various advance payments.

On October 5, 1979, plaintiff went to an attorney about a potential medical malpractice claim relating to treatment of the injuries that he sustained in the snowmobile accident, but no medical malpractice claim was filed. On April 8, 1980, however, the attorney asked plaintiff for a report on

his condition. Plaintiff's wife responded with a report and, although plaintiff did not at that time formally hire the attorney to represent him, he periodically contacted the attorney's firm regarding the claim. For example, on May 21, 1980, he sought advice as to whether he should undergo rehabilitation tests suggested by Mutual, and on May 27, 1980, he reported to the attorney that he had mentioned "attorney" to Story, who was "not pleased," because he would be unable to deal directly with plaintiff. Plaintiff continued to deal directly with Story and at some point expressed to him concern that the time period was running. In response, Story told him that the time could be extended. On October 13, 1980, plaintiff again contacted the attorney's office. That contact resulted in the attorney's memorandum to plaintiff's file:

"[T]he two year statute on his injury will be up in the middle of January.

"The doctor has told him that he won't be back to work by then and he may operate on his leg in the next month.

"The insurance company has told him many times that they are willing to extend the statute of limitations. They have been very nice to him, but should he take a chance on believing them.

"* * * * *

"I have tickled this for November 12th, but mayhap we should get started on medicals, etc.?"

On October 30, 1980, Story advised plaintiff by letter that Mutual would grant him an extension of time:

"I've always told you, verbally and written, of the statute of limitations on your claim. As you know the statute of limitations on your claim against Lowell Burdine normally would expire on the 12 day of January, 1981. In your case, we are taking an exception to this statute of limitations.

"This letter will act as our notification to you that we are extending the statute of limitations on the accident that occurred on January 12, 1979 on Highway 242 near Sisters, Oregon, up through June 12, 1981.

"As time passes, and it appears this new cut-off date needs extending, we can also do that."

On October 31, 1980, plaintiff forwarded a copy of that letter to the attorney's office.

On December 9, 1980, an associate of the attorney sent Mutual a letter thanking it for the "generous waiver of the statute of limitations in your letter of October 30th to [plaintiff]." Story then inquired of the attorney's office to determine whether the firm was representing plaintiff. In turn, the associate made inquiry of plaintiff, who responded that he desired to continue dealing directly with Story but would contact the firm in the future if he thought he needed to do so. The associate also diaried plaintiff's file for recontact on May 1, 1981; on that date he wrote to plaintiff reminding him that the extended deadline was approaching and that Mutual was not required to extend it again.

Sometime before May 1, plaintiff had requested a second extension of time, because he wanted to return to work before settling the case. Mutual's second extension, to December 10, 1981, was memorialized in a letter dated April 30 to plaintiff from Story. That letter concluded: "I am sure that you and I both hope we will not ever need to extend that again." On May 5, plaintiff left a message for the attorney's associate to inform him that the time had been extended "to December." By a letter on July 10, plaintiff's wife advised the attorney that plaintiff had returned to work and planned to work a while before discussing a settlement and reiterated that he had "until December." The attorney replied on July 15, acknowledging the letter from plaintiff's wife and cautioning plaintiff to get confirmation of the extension to December in writing.

Mutual continued advance payments through July 28, 1981, for a total of $57,130.93. On October 29, 1981, Story asked plaintiff to make a final settlement of his claim. According to plaintiff, that meeting "kind of spooked" him, and he decided to "hire" the attorney to conclude the settlement.

On October 31, plaintiff formally retained the attorney to represent him; in his deposition he stated that he retained him, not to sue anyone, but to settle with Mutual. Plaintiff did not give the approaching deadline any thought and did not think about whether there would be an additional extension of time, because he believed that hiring the attorney to commence settlement negotiations would satisfy the December deadline.

On November 5, the attorney wrote to Story, advising him that he had been retained by plaintiff to settle the claim. On November 18, Story called the attorney, who indicated that he would arrange to meet with him as soon as he could. On December 3, the attorney called Story and arranged an appointment for the following day, at which time they discussed the value of the claim. Story said that he thought that it was worth $50,000; the attorney said he thought that it was worth $150,000. There was no mention of the December 10 expiration date, and the meeting concluded with an agreement to communicate further. On December 18, the attorney called Story's office and discovered that he was on vacation; the attorney then wrote to Story requesting further contact. On January 11, 1982, Story advised that the Statute of Limitations on the claim had expired and that Mutual would do nothing further.

Plaintiff commenced this action on January 25, 1982, over three years after the accident and 46 days after expiration of the time extensions granted by Mutual.[1] In an amended complaint plaintiff claimed relief from the Statute of Limitations on the alternate grounds that Mutual had failed to comply with the notice provisions of ORS 12.155 and that defendants were equitably estopped from asserting that defense. In their answer, defendants interposed the limitation period as an affirmative defense.

First plaintiff and then defendants filed motions for summary judgment on the statutory notice issue; the trial court granted defendants' motion and denied plaintiff's motion. Defendants subsequently moved for summary judgment on plaintiff's alternative claim that defendants were estopped to assert the Statute of Limitations. The trial court granted that motion. Judgment for defendants was entered on June 20, 1983. This appeal followed.

In his first assignment of error, plaintiff contends that the trial court erred in granting defendants' cross-motion for partial summary judgment on the issue of non-compliance with the notice requirements of ORS 12.155, which provides:

"(1)   If the person who makes an advance payment

---

[1] Counsel representing plaintiff on appeal were associated after the original complaint had been filed.

referred to in ORS 18.520 or 18.530 gives to each person entitled to recover damages for the death, injury or destruction, not later than 30 days after the date the first of such advance payments was made, written notice of the date of expiration of the period of limitation for the commencement of an action for damages set by the applicable statute of limitations, then the making of any such advance payment does not suspend the running of such period of limitation. The notice required by this subsection shall be in such form as the Insurance Commissioner prescribes.

"(2)  If the notice required by subsection (1) of this section is not given, the time between the date the first advance payment was made and the date a notice is actually given of the date of expiration of the period of limitation for the commencement of an action for damages set by the applicable statute of limitations is not part of the period limited for commencement of the action by the statute of limitations."[2]

The applicable limitation in this case is two years, provided in ORS 12.110(1):

"An action * * * for any injury to the person or rights of

---

[2] ORS 18.520 and ORS 18.530, referred to in ORS 12.155(1), respectively provide:

ORS 18.520

"(1)  Advance payment made for damages arising from the death or injury of a person is not an admission of liability for the death or injury by the person making the payment unless the parties to the payment agree to the contrary in writing.

"(2)  For the purpose of subsection (1) of this section, advance payment is made when payment is made with or to:

"(a)  The injured person;

"(b)  A person acting on behalf of the injured person with the consent of the injured person; or

"(c)  Any other person entitled to recover damages on account of the injury or death of the injured or deceased person."

ORS 18.530

"Any advance payment made for damages arising from injury or destruction of property is not an admission of liability for the injury or destruction by the person making the payment unless the parties to the payment agree to the contrary in writing."

"Advance payment" is defined in ORS 18.500:

"As used in ORS 12.155 and 18.500 to 18.530, 'advance payment' means compensation for the injury or death of a person or the injury or destruction of property prior to the determination of legal liability therefor."

another, not arising on contract, and not especially enumerated in this chapter, shall be commenced within two years * * *."

Plaintiff's injury occurred January 13, 1979; he filed this action on January 25, 1982. It is undisputed that Mutual, before making any advance payments, appropriately notified plaintiff that the applicable limitation period would expire January 12, 1981. Plaintiff takes the position, however, that, although he did not commence this action until over three years after his injury, the running of the statute was suspended pursuant to ORS 12.155(2) because Mutual twice "extended" the period, thereby creating a new "applicable statute of limitations," and continued thereafter to make further advance payments, but did not then provide the requisite notice in ORS 12.155(1) in the form prescribed. Defendants, to the contrary, argue that Mutual's initial notice satisfied the statutory requirements and that the subsequent time extensions either did not trigger the statutory necessity to notify plaintiff or that their notices to him that the extensions would expire on the specified dates adequately served the statutory purpose.

We note that the purpose of ORS 12.155 is two-fold: (1) to allow an insurer to make advance payments without admitting liability for a claim, thereby encouraging such payments, and (2) to protect an injured party from being misled into believing that a limitation period is no longer applicable because the insurer has implicity acknowledged its insured's liability. *Duncan v. Durbin,* 276 Or 631, 636, 556 P2d 105 (1976). We do not decide whether Mutual's written notices of extensions of time complied sufficiently with ORS 12.155 to satisfy its underlying policy and that, therefore, the running of the period of limitation of ORS 12.110(1) was not tolled. Instead, we conclude that the notification provisions of ORS 12.155 do not apply to the time extensions at issue here.

ORS 12.155 requires notification in a prescribed manner of "the date of expiration of the period of limitations for the commencement of an action for damages *set by the applicable statute of limitations.*" In this case, under the "applicable statute of limitations"—ORS 12.110(1)—the period for commencing an action for damages expired on January 12, 1981. Plaintiff received appropriate notification

of that date. Neither of Mutual's decisions to allow plaintiff additional time in which to file an action created a *new* Statute of Limitations; that is a function reserved for the legislature. Although Mutual may have mischaracterized its action as "extending" the Statute of Limitations, the legal effect of that action was no more than a waiver of its right to assert the limitation as an affirmative defense until the stated date.[3] The language of ORS 12.155 is not subject to an expansive interpretation. *Ben Rybke Co. v. Royal Globe Insurance Co.*, 293 Or 513, 518, 651 P2d 138 (1982). We conclude that such a waiver is not subject to the notice provisions of ORS 12.155. We hold that Mutual complied with the requirements of ORS 12.155 by giving the appropriate notice before making any advance payments; it was not statutorily required to do more. The trial court did not err in granting defendants summary judgment on that issue.

As a second assignment of error, plaintiff contends that the court erred in granting defendants' motion for summary judgment on the issue of estoppel in avoidance of the Statute of Limitations. That assignment is predicated on the claim that defendants are equitably estopped from raising the bar of ORS 12.110 by certain representations and conduct of Mutual. Plaintiff's complaint alleged:

"XXXVII

"But for the affirmative promises of the adjuster to continue negotiations and his acts of negotiation, the attorney for plaintiff would have been alerted to file, and would have filed a complaint on or before December 10, 1981.

"XXXIX

"The insurance company's conduct toward and statements to plaintiff were such as to lull and did lull plaintiff and later his agent into reasonably believing that his case would be settled and that the statute of limitations would not prevent

---

[3] Plaintiff also appears to argue that conflicting inferences in the factual material as to whether "an agreement" existed between him and the insurer to permit time extensions or whether the extensions were a unilateral act of the insurer create a material question of fact that precludes summary judgment. Even assuming such a fact question, however, we do not believe it to be material. Any waiver of the right to assert a Statute of Limitation defense is necessarily a unilateral act of the party entitled to that right. Plaintiff could not be bound by that waiver and be prevented from filing an action.

such settlement, or even be asserted by the carrier.

### "XXXIX

"The affirmative inducements of the insurance carrier, combined with its payments to plaintiff and its settlement negotiations were such that plaintiff and his agent reasonably relied upon them and did not file an action or lawsuit on or before December 10, 1981. The insurance company's conduct was such that the company is now estopped to claim the statute of limitation in the defense of this case."

Our first task is to determine the substance of the representations and conduct at issue. Plaintiff argues in his brief that the relevant representations and conduct by defendants' insurer's adjuster, Story, inducing plaintiff to overlook the running of time for filing, are as follows:

"1.   The adjuster's promise to settle when plaintiff's medical condition was stationary;

"2.   The adjuster's promise to extend the statute of limitations as needed to allow for negotiation and settlement;

"3.   The extensions of the statute with the promise of further extensions, if needed;

"4.   The delivery of $57,000 in advance payments over a period extending seven months past the time that the two-year statute of limitations expired."

Plaintiff argues that the acts of the adjuster inducing plaintiff's counsel to overlook the time for filing are as follows:

"1.   The adjuster agreed that he and the attorney would settle the case.

"2.   The adjuster agreed that he and the attorney would continue negotations until it was settled.

"3.   The adjuster and attorney agreed that there was no need to litigate.

"4.   On December 4, 1981 the adjuster agreed to contact his supervisor about an offer and call the attorney.

"5.   There was no need for haste in the negotiation process.

"6.   The adjuster did not mention the December 10, 1981 deadline or mention any reliance thereupon at their one meeting on December 4, 1981."

Preliminarily, we note that, from our review of the depositions of plaintiff, plaintiff's attorney and Story, which

comprise the primary evidentiary material on this issue, plaintiff's characterization of the facts includes some inferences that the evidence presented does not justify.

Specifically, in reference to representations to plaintiff, we find in plaintiff's deposition his statement that "Story told me he wanted to settle the claim," but nothing to the effect that the agent *promised* to settle it; we also find only the statement that Story indicated Mutual "could extend [the filing deadline] as many times as need be," not that it *would* do so. In reference to representations to plaintiff's attorney, we extract the attorney's testimony as the basis for our discussion:

"* * * We talked about the accident, and not about liability. We talked about his injuries and the amount of specials. I said, I am here to settle it, and he said that he was there to settle it. So I said, what do you think it's worth. He said, I think it's worth $50,000. He said, what do you think it's worth. I said, I think it's worth $150,000. Nobody raised their voice. That was about the end of our talk about money. He said he would talk to his leaders and get back to me. He said, are we going to have any trouble about this. I said, no, you have been very nice to Johnson, and we will stay with this thing until we get it settled, and we will settle it.

"Q   Who said, that, you did or he did?

"A   I did, and he agreed. We were there to settle.

"* * * * *

"Q   On December 4, 1981, what was your understanding as to what the statute of limitation period was?

"A   I didn't consider it. I wasn't figuring on it at all.

"* * * * *

"Q   And on December 4, 1981, why did you consider that not a relevant concern?

"A   Because I didn't know what they had agreed to. I had no memory, at that time, of the letter in the file. I assumed that we were going to settle it, we were going to take whatever time to settle it. The weather was bad, as I say, and it took me a couple of weeks to get over there. I was in no hurry and Mr. Story was in no hurry. We were going to get it settled.

"* * * * *

"A   * * * He said he wanted to settle the case, and I assumed he meant that. That is what he told Mr. Johnson,

[plaintiff] according to Mr. Johnson, because that is what he told me. We weren't sparring off talking about a lawsuit. We were going to settle something. He'd paid out $50,000 or $60,000.

"Q   I take it then the two of you departed on December 4, 1981 in Burns, with Story making an offer of $50,000 and you countering with an offer of $150,000, is that right?

"A   Right.

"Q   And no agreement?

"A   He agreed to submit it and call me.

"Q   Did he tell you when he would be getting back to you?

"Q   No, and I told him there was no hurry."

The only controverting evidence as to what transpired in the meeting between plaintiff's attorney and Story is Story's deposition testimony that he understood that the attorney would discuss the situation with plaintiff and contact Story.

■■   We turn to the question of whether defendants are equitably estopped to raise the Statute of Limitations defense. The essential elements of estoppel are set out in *Bennett v. City of Salem, et al,* 192 Or 531, 541, 235 P2d 772 (1951):

"To constitute an equitable estoppel, or estoppel by conduct, (1) there must be a false representation; (2) it must be made with knowledge of the facts; (3) the other party must have been ignorant of the truth; (4) it must have been made with the intention that it should be acted upon by the other party; and (5) the other party must have been induced to act upon it."

See also *Bash v. Fir Grove Cemeteries Co.,* 282 Or 677, 687, 581 P2d 75 (1978); *Hess v. Seeger,* 55 Or App 746, 760-61, 641 P2d 23, *rev den* 293 Or 103 (1982). Although those elements suggest that proof of fraudulent intent is necessary, cases decided after *Bennett* have established that such proof is not required. *See Schmeck v. Bogatay,* 259 Or 188, 197, 485 P2d 1095 (1971); *Hess v. Seeger, supra,* 55 Or App at 761-62. There must, however, be a justifiable reliance by the party seeking to invoke estoppel, and that reliance must be reasonable. *Bash v. Fir Grove Cemeteries Co., supra,* 282 Or at 687; *Hess v. Seeger, supra,* 55 Or App at 761.

Because plaintiff sought and obtained legal counsel before the date on which Mutual's waiver of the statute

expired, the question may be narrowed to whether the representations to the attorney as a matter of law were sufficient to amount to an affirmative inducement to the attorney to forebear from filing an action or to lull him into disregarding the filing deadline. We conclude they do not rise to that level and therefore cannot form the basis for estoppel.

■    Drawing all inferences from the evidence in favor of plaintiff, we find no material question of fact raised as to whether conduct or representations by defendants' adjuster were such as to induce the attorney not to file an action. At the conclusion of the negotiation session the attorney and the adjuster were $100,000 apart in their negotiations. We find nothing in the representations made by the adjuster at that session that was a promise to settle or that told the attorney not to file suit or that suggested that a lawsuit would not be necessary. *Cf. Malaer v. Flying Lion, Inc.,* 65 Or App 154, 159, 670 P2d 214 (1983) (adjuster's statements he would "take care of the claim" and "you don't need to worry about it" could be interpreted as a promise to settle and pay damages). The representations only indicate a willingness on the part of the adjuster to negotiate further outside the arena of the courtroom. Mere pendency of negotiations does not give rise to an estoppel. *See Lyden v. Goldberg,* 260 Or 301, 305-06, 490 P2d 181 (1971).

Moreover, the adjuster's silence as to the impending expiration date of the insurer's waiver did not create "a belief of the existence of a state of facts which it would be unconscionable to deny." *See Hess v. Seeger, supra,* 55 Or App at 762. The attorney had access to the information regarding that expiration date, and it was incumbent upon him to avail himself of that information. He candidly admits that he simply forgot about it. His knowledge of the effect of disregarding that date must be imputed to plaintiff.[4]

---

[4] As a secondary argument on the estoppel issue, plaintiff asserts that, under principles of agency, the attorney's knowledge of the filing deadline, because it was gained before his formal employment, is significant only if he had it in mind during the employment period. We find that argument to be without merit, because knowledge is chargeable to the principal "where it was acquired so recently, or under such circumstances, that it will be presumed to have been in [the agent's] mind at the time of the transaction [by the agent] in question." *Bailey v. Hickey,* 99 Or 251, 257, 195 P 372 (1921). This is such a case. The record discloses that the attorney was aware of the accident date from the time of his first contact with plaintiff and, accordingly, should have been aware of the expiration date of the Statute of Limitations. He was consulted

■ We conclude that the adjuster's conduct and representations were as a matter of law not affirmative inducements not to file and were not sufficient in law to support the allegation that plaintiff and his attorney were lulled into a sense of security, therefore causing the attorney to withhold filing an action before the insurer's waiver expired.

■ As an alternative position, plaintiff argues that estoppel may be premised upon the insurer's alleged failure to comply with OAR 836-80-235(5):

> "If an insurer continues negotiations for settlement of a claim directly with a claimant who is neither an attorney nor represented by an attorney until the claimant's rights may be affected by a statute of limitations or policy time limit, the insurer shall give the claimant written notice that the time limit may be expiring and may affect the claimant's rights. The notice shall be given to first party claimants not less than 30 days before, and to third party claimants not less than 60 days before, the date on which the insurer believes the time limit may expire."

We reject that argument. The purpose of that rule is "to define certain minimum standards the violation of which will be considered to constitute unfair claims settlement practices within the purview of ORS 746.230." OAR 836-80-205(2). It is not intended "in any way [to] expand or limit or otherwise change the procedural or substantive rights, or both, of claimants as provided in Oregon Revised Statutes." OAR 836-80-205(4). If the insurer has failed to give the notice contemplated by OAR 836-80-235(5), it may have committed an unfair trade practice, but the appropriate penalty for that violation has been provided under ORS 731.988.[5] *See Farris v.*

---

about the first waiver of the statute and when it would expire and was advised of the second and on both occasions cautioned plaintiff about it. Without deciding whether an agency relationship was created before the formal agreement of October 31, 1981, we conclude that, in any event, the attorney may be presumed to have possessed that knowledge.

[5] ORS 731.988 provides, in pertinent part:

> "(1) Any person who violates any provision of the Insurance Code, any lawful rule or final order of the commissioner or any final judgment or decree made by any court upon application of the commissioner, shall forfeit and pay to the General Fund of the State Treasury a civil penalty in an amount determined by the commissioner of not more than $2,000 for each offense, or $10,000 in the aggregate for all such offenses within any three-month period. In the case of individual agents or adjusters, the civil penalty shall be not more than $200 for

*U.S. Fid. and Guar. Co.,* 284 Or 453, 457, 587 P2d 1015 (1978). To permit noncompliance with OAR 836-80-235(5) to be invoked as a basis for an estoppel not only would enlarge plaintiff's rights, but essentially would create a judicial remedy not contemplated within the statutory scheme. We decline to do so.

Defendants were not estopped from asserting the Statute of Limitations; the trial court properly granted summary judgment on that issue.

Because of our disposition of this case, we need not address plaintiff's final assignment of error regarding the trial court's granting of defendants' motion for a separate trial on their Statute of Limitations defense.

Affirmed.

---

each offense or $1,000 in the aggregate for all such offenses within any three-month period. Each violation shall be deemed a separate offense.

"(2) In addition to the civil penalty set forth in subsection (1) of this section, any person who violates any provision of the Insurance Code, any lawful rule or final order of the commissioner or any final judgment or decree made by any court upon application of the commissioner, may be required to forfeit and pay to the General Fund of the State Treasury a civil penalty in an amount determined by the commissioner but not to exceed the amount by which such person profited in any transaction which violates any such provision, rule, order, judgment or decree."