STATE OF OREGON,
acting by and through the
DIRECTOR OF VETERANS' AFFAIRS,
*Appellant,*

*v.*

GUTHRIE et al,
*Respondents.*

(86-07-21,062E; CA A48180)

775 P2d 874

Linda DeVries Grimms, Assistant Attorney General, Salem, argued the cause for appellant. On the briefs were Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, and Darrell E. Bewley, Assistant Attorney General, Salem.

Clayton C. Patrick, Salem, argued the cause for respondents Max R. Brown and Kathleen Brown. With him on the brief were William D. Brandt, Salem, for respondents Brown, and William F. Schroeder, Vale, for respondent L. Annette Nevin.

Max S. Taggart II, Ontario, waived appearance for respondents Shirley G. Nunnally and Joan M. Nunnally.

No appearance for respondent John Guthrie.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

**BUTTLER, P. J.**

The Director of the Department of Veterans' Affairs (DVA) appeals from a judgment in this foreclosure action, assigning error to the trial court's ruling that it is estopped from foreclosing on one of two properties covered by the mortgage and the failure to provide for interest on the loan balance at an increased rate from the time the property was sold. We review *de novo.*

On March 26, 1979, DVA loaned $150,000 to defendants Nunnally. The loan was secured by a mortgage on two separate parcels of real property, one of which is a residence located in Ontario (the residence) and the other is 2666 acres of ranch land located between Harper and Westfall (the ranch). On February 4, 1980, the Nunnallys sold the ranch to defendant Guthrie, who assumed all obligations under the note and mortgage. On March 5, 1980, the Nunnallys sold the residence to defendant Nevin under a land sale contract for $67,500, $15,000 of which was paid down and $52,500 was payable in monthly installments. The contract stated explicitly that the residence was encumbered by the DVA mortgage. The Nunnallys assigned their vendors' interest under the land sale contract to Claudette Lacey who, in turn, assigned it to defendants Brown on August 6, 1981. Nevin thereafter made his contract payments to Brown but paid property taxes to Guthrie, who then paid them to DVA, along with the property taxes on the ranch.

On January 16, 1981, DVA sent a letter to Shirley Nunnally, with copies to Guthrie, Nevin and Lacey, stating that it had learned that the mortgaged properties had been sold to different purchasers. It advised Nunnally that he would have to contact the local branch office and apply for a partial release of the property and, until that was done, it would accept no further payments from the buyers. DVA, however, did accept further payments from Guthrie and, in a letter to Shirley Nunnally dated January 29, 1981, stated that it was accepting the sale of the mortgaged property to more than one person as an exception to its rules, which required property securing a loan to be under one ownership. That letter also stated that no further transfers of ownership of any portion of the land would be accepted without first obtaining a partial release and that the interest rate was increased to 11 percent as of the date of sale.

On *two occasions*, the Nunnallys sought release of the residence from the mortgage. The first request was made before they sold either of the properties. DVA, in a letter dated January 23, 1980, stated that a release would not be given unless the loan was assumed by the purchaser of the ranch *and* the loan balance was reduced to $75,000. The Nunnallys apparently never communicated that to Nevin, Lacey or Brown. The second request was on August 27, 1981; DVA advised them that a release would not be given, because the loan to value ratio was not adequate to permit a release. Brown stated in his affidavit that he spoke by telephone to Steve Jaeger of DVA in August, 1981, and was told there would be "no problem in separating the loans once the application was submitted" or that there would be "no problem" releasing the residence but that the Nunnallys or Guthrie would have to make application to do so. Neither Brown nor the others made any further effort to effect a release of the property.

The last mortgage payment was made by Guthrie on August 7, 1984. On December 13, 1985, DVA sent a letter to him, with copies to the Nunnallys and Nevin, stating that the account was delinquent and that, if the delinquency was not cured by February 13, 1986, a foreclosure proceeding would be instituted. The delinquency was not cured, and this action was commenced for foreclosure of both pieces of real property.

**1.**     This case was tried to the court on the basis of affidavits. The court held that DVA was equitably estopped from foreclosing its mortgage on the residence.

> " 'To constitute an equitable estoppel, or estoppel by conduct, (1) there must be a false representation; (2) it must be made with knowledge of the facts; (3) the other party must have been ignorant of the truth; (4) it must have been made with the intention that it should be acted upon by the other party; and (5) the other party must have been induced to act upon it.' " *Bash v. Fir Grove Cemeteries, Co.,* 282 Or 677, 687, 581 P2d 75 (1978), quoting from *Bennett v. City of Salem, et al,* 192 Or 531, 541, 235 P2d 772 (1951).

There is no evidence of any false representations having been made by DVA. The closest thing is Brown's statement that an agent of DVA said that a release would be "no problem" *if* an application were made. The agent denied having said that but,

even if he had, no application was submitted thereafter, so the representation had no effect. At no time did DVA indicate in any way that it had released the residence from the mortgage, nor did it say or do anything to mislead any of the parties. If anyone misled Brown and Nevin, it was the Nunnallys, who apparently failed to inform them that the loan would have to be reduced to $75,000 before the residence could be released. The parties do not argue that DVA's mortgage does not cover the residence, and there are no grounds on which DVA may be equitably estopped. The trial court erred in not allowing DVA to foreclose on the residence as well as the ranch property.

However, defendants contended below that, if DVA is not estopped from foreclosing the residence, it should be required to sell the ranch property first; DVA agreed. Accordingly, on remand the judgment should be modified so to provide.

2.      Plaintiff also assigns error to the trial court's determination that DVA was entitled to prejudgment interest at the rate of 7.2 percent, the original rate of the note, rather than 11 percent, the rate set by DVA when the mortgaged property was transferred. ORS 407.275(2)[1] and OAR 274-20-380 provide that the interest rate on a DVA note may be increased when the property securing it is transferred, with exceptions not applicable here. Pursuant to OAR 274-20-343, that rate was properly set at 11 percent for this note. Accordingly, the judgment must be modified on remand to provide for prejudgment interest at the rate of 11 percent, rather than 7.2 percent.

Reversed in part, and remanded for entry of judgment not inconsistent with this opinion.

---

[1] ORS 407.275(2) provides:

"If the ownership of the secured property is transferred by deed or otherwise to anyone other than the original borrower, the surviving spouse, unremarried former spouse, surviving child or stepchild of the original borrower, or a veteran eligible for a loan under this chapter and Article XI-A of the Oregon Constitution, who assumes the previous loan for the property as described in ORS 407.305, the interest from the date of transfer shall be at the rate per annum then fixed as provided by ORS 407.335. However, the director, during the term of the loan, may periodically prescribe the interest rates to be paid by the transferee."